**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware entity, | |
| **Plaintiff,** | |
| v. | Case No. 3:20-cv-305 |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD CASUALTY INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY, HARTFORD INSURANCE COMPANY OF ILLINOIS, HARTFORD INSURANCE COMPANY OF THE MIDWEST, HARTFORD INSURANCE COMPANY OF THE SOUTHEAST, HARTFORD LLOYD'S INSURANCE COMPANY, HARTFORD UNDERWRITERS INSURANCE COMPANY, MAXIMUM CASUALTY INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, NAVIGATORS SPECIALITY INSURANCE COMPANY, NEW ENGLAND INSURANCE COMPANY, NUTMEG INSURANCE COMPANY, PACIFIC INSURANCE COMPANY, LIMITED, PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD, SENTINEL INSURANCE COMPANY, LTD., TRUMBULL INSURANCE COMPANY, and TWIN CITY FIRE INSURANCE COMPANY, | CLASS ACTION COMPLAINT  DEMAND FOR JURY TRIAL  PLEADING FILED: MARCH 6, 2020 |
| **Defendants.** | |

**PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES**

Plaintiff, MSP Recovery Claims, Series LLC ("Plaintiff"), a Delaware entity, on behalf of itself and all others similarly situated (the "Class Members"), brings this action against The Hartford Financial Services Group, Inc., First State Insurance Company, Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, Hartford Lloyd's Insurance Company, Hartford Underwriters Insurance Company, Maximum Casualty Insurance Company, Maxum Indemnity Company, Navigators Insurance Company, Navigators Specialty Insurance Company, New England Insurance Company, Nutmeg Insurance Company, Pacific Insurance Company, Limited, Property and Casualty Insurance Company of Hartford, Sentinel Insurance Company, Ltd., Trumbull Insurance Company, and Twin City Fire Insurance Company (singularly "Defendant" and collectively, "Defendants"), and alleges:

## INTRODUCTION

1.     Defendants have systematically and uniformly failed to honor their primary payer obligations under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act (the "MSP Law"), by failing to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents (the "accident-related medical expenses") that should have been paid by Defendants but, instead, were paid by Medicare and/or Medicare Advantage Plans, which include Medicare Advantage Organizations, as well as Medicare Service Organizations ("MSOs"), Independent Physician Associations ("IPAs"), and other first tier and downstream entities (collectively "MAOs"). Further, Defendants have also failed to reimburse Plaintiff and the Class Members for accident-related medical expenses upon entering into settlements with Medicare beneficiaries. As a result, the cost of those accident-related medical expenses have been borne by

Medicare and MAOs to the detriment of the Medicare Trust Funds and the public.

2.      More specifically, Defendants are auto or other liability insurers that provide either no-fault or med-pay insurance to its customers, including Medicare beneficiaries enrolled under Part C of the Medicare Act ("Enrollees"). Pursuant to their contractual obligations with their insureds, and under state law, Defendants are to provide coverage for their insureds' accident-related medical expenses on a "no-fault" basis (in other words, without regard for whether the insured was at fault for the accident). In the case of automobile and other accidents specifically involving Enrollees of MAOs, Defendants are considered primary plans under the MSP Law. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan … a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21. Accordingly, Defendants' obligation to pay for accident-related medical expenses on behalf of Enrollees is primary relative to Medicare's obligation to pay for those same accident-related medical expenses, which is secondary. Defendants have systematically failed to make these payments and reimbursements, passing on those expenses to Medicare and MA Plans.

3.      Plaintiff's assignors are MAOs that provide Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MAOs provide such services pursuant to contracts with the Centers for Medicare and Medicaid Services ("CMS") in which CMS pays the MAOs a fixed fee per enrollee and the MAOs provide, at a minimum, the same benefits that Enrollees would receive under traditional Medicare. MAOs stand in the same footing as traditional Medicare, including under the MSP Law, which declares that Medicare is a "secondary payer" to all other sources of coverage and, consequently, are empowered to recoup from rightful primary payers if they pay for services that fell within overlapping insurance

maintained by Enrollees with a primary payer.

4.    The overriding purpose of the MSP Law is to ensure that Medicare and MAOs do not pay for medical expenses on behalf of Medicare beneficiaries that should be paid instead by primary payers such as Defendants. Without the provisions in the MSP Law establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold their end of the bargain and pay the medical expenses associated with accident-related injuries and/or treatments. Therefore, Medicare and MAOs, which are otherwise required to conditionally pay accident-related medical expenses promptly with the expectation of reimbursement from a primary payer, would unjustly bear the burden and the overwhelming expense of such injuries and treatments.

5.    In addition to their obligation to pay for, and/or reimburse Medicare and MAOs, accident-related medical expenses on behalf of their enrollees, primary payers like Defendants have an affirmative burden, under applicable federal regulations promulgated under the MSP Law, to: (i) identify whether their insureds are Medicare beneficiaries; and (ii) report their primary payer responsibility to CMS.

6.    Even in the face of the MSP Law's clear legal requirement that primary payers like Defendants pay for accident-related medical expenses, take steps to identify whether their enrollees are Medicare beneficiaries and report their primary payer responsibility to CMS, they rarely honor their obligations and, instead, take steps to ensure that the burden for those accident-related medical expenses is borne by Medicare and MAOs.

7.    In large part, Defendants' deliberate and systematic avoidance of payment and/or reimbursement obligations under the MSP Law has been successful in its primary objective—to pass on accident-related medical expenses to Medicare and MAOs, including Plaintiff's assignors

and the Class Members.

8.      To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by Medicare or MAOs, and provided for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations under the MSP Law.

9.      Plaintiff utilizes a proprietary system that matches the health care claims data from its assignors to the publicly available reporting data from CMS, police crash reports available in limited jurisdictions, and claims data made available by primary payers like Defendants, either voluntarily through a coordination of benefits process that primary payers ordinarily stonewall or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing, to automate the process of identifying instances in which primary payers like Defendants fail to honor their obligations under the MSP Law.

10.      As described in detail below, Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

11.      This action seeks redress for Defendants' flagrant and systematic failure to comply with the MSP Law.

## NATURE OF THE ACTION

12.     This is a class action lawsuit under the MSP Law, arising from Defendants' systematic and uniform failure to reimburse conditional payments made by Plaintiff's assignors and the Class Members on behalf of Enrollees for accident-related medical expenses.

13.     Defendants' liability to reimburse such conditional payments ordinarily arises in one of two contexts: (i) where Defendant is obligated to pay for the Enrollees' accident-related medical expenses in the first instance under a "no-fault" coverage liability policy ("no-fault policy"); or (ii) where Defendant has entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies[1] issued by Defendants.

14.     On behalf of itself and the Class Members, Plaintiff seeks, *inter alia*, double damages under the MSP Law's private cause of action for Defendants' failure to properly reimburse Plaintiff's assignors and the Class Members conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period.

15.     Defendants have failed to fulfill statutory duties as "no-fault" insurers. Specifically, Defendants have systematically and uniformly failed to pay or reimburse conditional payments by Plaintiff and Class Members on behalf of Enrollees for accident-related medical expenses. Enrollees are Medicare beneficiaries who were enrolled in a Medicare Advantage Plan offered or managed by Plaintiff's assignors and Class Members, all of which are MAOs. Plaintiff's assignors and the Class Members suffered an injury-in-fact from Defendants' failure to reimburse, and accordingly have standing to sue under 42 U.S.C. §1395y(b)(3)(A).

16.     Plaintiff's assignors and the putative Class Members provided Medicare benefits to the Enrollees. In numerous instances, Enrollees suffered injuries in connection with an accident,

---

[1] Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2).

and Plaintiff's assignors and the putative Class Members paid for accident-related medical expenses.[2] Because Enrollees were also covered by no-fault policies issued by Defendants, Defendants are primary payers under the MSP Law and either should have paid the accident-related medical expenses directly or should have reimbursed Plaintiff and the putative Class Members for the conditional payments they made.

17.     Defendants have also failed to fulfill their statutory duties upon entering settlements with Enrollees. Specifically, Defendants have entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies issued by Defendants. Accordingly, Defendants are primary payers under the MSP Law and either should have directly paid the Enrollees accident-related medical expenses or reimbursed Plaintiff and the putative Class Members for the conditional payments they made.

18.     Rather than honor their obligations under the MSP Law, Defendants systematically and deliberately take steps to avoid paying or reimbursing the accident-related medical expenses paid by Plaintiff's assignors and the Class Members on behalf of the Enrollees. These steps include failing to report their primary payer responsibility to CMS and failing to coordinate benefits with MAOs, including specifically with Plaintiff on behalf of Plaintiff's assignors.[3]

19.     Defendants' deliberate non-compliance with reporting requirements under the MSP

---

[2] MAOs are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendants. MAOs cannot reasonably expect that a primary payer is liable for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any payments made by MAOs, and Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

[3] Prior to the filing of this lawsuit, Plaintiff sent correspondence seeking to coordinate benefits with Defendants, as contemplated under 42 C.F.R. §411.25.

Law and refusal to coordinate benefits with MAOs are designed to avoid detection as the primary payer responsible for Enrollees' accident-related medical expenses, ultimately allowing Defendants to avoid their obligations as primary payers.

20.     Upon information and belief, Defendants have failed to report their primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiff's assignors for accident-related medical expenses on behalf of their Enrollees, for which Defendants have a demonstrated responsibility to pay under the MSP Law.

21.     As described in detail herein, Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet its statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

22.     Using the proprietary system designed and developed by Plaintiff's related entity, MSP Recovery, LLC (the "MSP System"), Plaintiff can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[4] to identify claims where Defendants have failed to honor their primary payer responsibilities on a class-wide basis.

23.     The MSP System utilizes ICD-9-CM or ICD-10-CM medical diagnosis codes and

---

[4] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in Appendix 1 to this Complaint. *See also* Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to gather information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

24.     The MSP System captures data from different sources, including CMS and publicly-available police crash reports, to identify unreimbursed conditional payments made by Plaintiff's assignors for their Enrollees' accident-related medical expenses for which Defendants are responsible as the primary payer. This claims identification process can also be applied class-wide to the data obtained from Class Members.

25.     The MSP System can also identify the amounts owed, through a data matching process using Plaintiff's assignors' EDI, Class Members' EDI and Defendants' EDI, to discover and identify unreimbursed conditional payments made by Plaintiff's assignors for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible as the primary payer. This data matching process can also be applied class-wide by matching Defendants' EDI with the Class Members' EDI to identify unreimbursed conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible.

26.     Using the MSP System, Plaintiff has identified multiple instances in which Plaintiff's assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendants. Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations, including Defendants entering into settlements with Enrollees.

27.    Plaintiff has identified numerous instances where Defendants admitted, by reporting to CMS, that they were obligated (pursuant to no-fault and other liability policies) to provide primary payment on behalf of Enrollees. A list of such instances is attached hereto as Exhibit A.

28.    Plaintiff has also identified instances where Defendants are identified in police crash reports[5] as the insurer that was contractually obligated (pursuant to no-fault policies) to provide primary payment on behalf of Enrollees for unreimbursed conditional payments made by Plaintiffs' assignors in connection with accident-related medical expenses.

29.    The MSP System also identifies numerous other instances in which Plaintiff's assignors made conditional payments on behalf of Enrollees for which the proper primary payer cannot be identified because (i) the primary payer has failed to report its primary payer responsibility as required by the MSP Law, or (ii) police crash reports that would identify the appropriate primary payer are not available to Plaintiff in the jurisdiction in which the accident occurred. Utilizing the MSP System to perform data-matching of Plaintiff's assignors' EDI with Defendants' EDI, however, would allow Plaintiff to identify with specificity those unreimbursed conditional payments for accident-related medical expenses.

30.    Plaintiff has standing. To demonstrate standing, Plaintiff provides details below relating to specific exemplars; however, the claims identified in Exhibit A identify the greater universe of instances where Defendants have failed to pay and/or reimburse conditional payments made by Plaintiff's assignors for accident-related expenses and also confer standing upon Plaintiff.

---

[5] Police crash reports are only publicly available in a handful of jurisdictions, including Florida, Texas, Ohio and Connecticut.

## PARTIES[6], JURISDICTION AND VENUE

31.    MSP Recovery Claims, Series LLC ("MSPRC") is a Delaware series limited liability company with a principal place of business located at 2701 S. Lejeune Road, 10th Floor, Coral Gables, Florida 33134. MSPRC's  limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSPRC.

32.    MSPRC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain particular series. All designated series form a part of MSPRC and pursuant to MSPRC's limited liability agreement and applicable amendment(s), each designated series is owned and controlled by MSPRC. MSPRC may receive assignments in the name of MSPRC and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, MSPRC maintains the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by MSPRC in its own name or it may elect to bring suit in the name of its designated series.

33.    MSPRC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to MSPRC.

---

[6] Plaintiff has made a good faith effort to accurately identify the Defendant parties named in this Complaint and has relied on information obtained from Defendants' website, police crash reports and reporting data from Insurance Services Office and a vendor called MyAbility. MyAbility is one of sixteen (16) CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. The reporting data attached is taken directly from the data that CMS stores, which is inputted by Defendant, not Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data is attributable to the manner in which Defendant chose to report.

34.     Series 16-08-483, 15-09-157, and 16-11-509 are designated series of MSPRC with their principal place of business at 2701 S Lejeune Road, 10th Floor, Coral Gables, Florida 33134.

35.     Defendant The Hartford Financial Services Group, Inc. is a financial holding company for a group of insurance subsidiaries that issue property and casualty, liability, and no-fault policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

36.     Defendant First State Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

37.     Defendant Hartford Accident and Indemnity Company is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

38.     Defendant Hartford Casualty Insurance Company is a company that issues liability and no-fault policies, with its principal place of business at 501 Pennsylvania Parkway, Suite 400, Indianapolis, Indiana 46280.

39.     Defendant Hartford Fire Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

40.     Defendant Hartford Insurance Company of Illinois is a company that issues property and casualty insurance policies, with its principal place of business at 4245 Meridian Parkway, Aurora, Illinois 60504.

41.     Defendant Hartford Insurance Company of the Midwest is a company that issues liability and no-fault policies, with its principal place of business at 501 Pennsylvania Parkway,

Suite 400, Indianapolis, Indiana 46280.

42.     Defendant Hartford Insurance Company of the Southeast is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

43.     Defendant Hartford Lloyd's Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at 19450 Texas State Highway 249, Houston, Texas 77070.

44.     Defendant Hartford Underwriters Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

45.     Defendant Maxum Casualty Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

46.     Defendant Maxum Indemnity Company is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

47.     Defendant Navigators Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at One Penn Plaza, 32nd Floor, New York, New York 10119.

48.     Defendant Navigators Speciality Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at One Penn Plaza, 32nd Floor, New York, New York 10119.

49.     Defendant New England Insurance Company is a company that issues property and

casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

50.     Defendant Nutmeg Insurance Company is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

51.     Defendant Pacific Insurance Company, Limited is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

52.     Defendant Property & Casualty Insurance Company of Hartford is a company that issues property and casualty insurance policies, with its principal place of business at 501 Pennsylvania Parkway, Suite 400, Indianapolis, Indiana 46280.

53.     Defendant Sentinel Insurance Company, Ltd. is a company that issues property and casualty insurance policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

54.     Defendant Trumbull Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

55.     Defendant Twin City Fire Insurance Company is a company that issues property and casualty policies, with its principal place of business at 501 Pennsylvania Parkway, Suite 400, Indianapolis, Indiana 46280.

56.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

57.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d)

because at all times material hereto, Defendants resided, transacted business, were found, or had

agents in this District, and a substantial portion of the alleged activity affecting trade and commerce

discussed below has been carried out in this District.

58.     This Court has personal jurisdiction over Defendants because Defendants are at

home in this forum, and personal jurisdiction over Defendants does not offend traditional notions

of fair play and substantial justice.

**STANDING ALLEGATIONS**

59.     Numerous assignors have assigned their recovery rights to assert the causes of

action alleged in this Complaint to series LLCs of Plaintiff.[7] Pursuant to the assignments, Plaintiff

maintains the legal right to sue on behalf of each of its designated series LLCs. Plaintiff's limited

liability agreement and Delaware law provide that all rights arising from the assignment to its

series LLCs, along with the right to bring any lawsuit in connection with said assignment, belong

to Plaintiff:

> Without limiting the foregoing, the Company's purposes include
> owning and pursuing claims recovery and reimbursement rights
> assigned to the Company or any of its designated series, by
> Medicare Advantage Organizations … and other health care
> organizations or providers authorized by state or federal law … to
> pay for, provide or arrange for the provision of medical and health
> care services or supplies to persons, including but not limited to
> those who are covered under government healthcare programs such
> as Medicare, Medicare Advantage or Medicaid. The Company will
> own the assigned rights but may segregate the assignments by
> establishing series interests pursuant to Title 6, § 18-215 of the
> Delaware Code to serve as units of the Company. **For avoidance of
> doubt, the Company is authorized to pursue or assert any claim
> or suit capable of being asserted by any designated series arising**

---

[7] The assignments to the various Series LLCs of Plaintiff for the exemplars used to establish
standing are alleged in detail in Appendix 2 to this Complaint. However, Plaintiff seeks recovery
on behalf of each of its assignors with claims against Defendants. All of the assignments are valid
and binding contracts and confer standing on Plaintiff to pursue the claims asserted herein.

**from, or by virtue of, an assignment to a designated series**.

Section 2 of Second Amendment of Limited Liability Company Agreement of MSP Recovery Claims, Series LLC (amending Section 2.3, entitled "Purpose," to include the language quoted above) (emphasis added). As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by the assignors that should have been paid by Defendants in the first instance.

60.     Each of the individual claims set forth herein has been assigned to Plaintiff. The claims are not subject to carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiff's right to bring these causes of action.

61.     The allegations set forth herein plainly demonstrate that Plaintiff's assignors suffered damages as a direct result of Defendants' individual failure to reimburse conditional payments as required under the MSP Law.

62.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

63.     Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly classifies each Medicare payment for a particular item or service as "reasonable and necessary."

64.     Once an MAO (or Medicare Payer) makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

65.     The items and services received by and paid on behalf of Plaintiff's assignors' Enrollees, including the exemplar claims below, were reasonable and necessary to treat the injuries

suffered by each of the Enrollees.

66.     By way of example, Plaintiff sets forth the exemplars below to illustrate Defendants' systematic and uniform failure to fulfill: (i) their statutory duties as a "no-fault" coverage insurer; and (ii) their statutory duties when entering into settlements. In each of these instances, Defendants have reported and admitted their primary payer status and responsibility for the accident-related medical expenses for medical items and/or services provided to Enrollees within ten (10) days of the accident and for which Plaintiff's assignors made conditional payments.

### The Exemplar No-Fault Claims

*The E.H. Claim Demonstrates the Right to Recover for Defendant Hartford Casualty Insurance Company's Failure to Meet its Reimbursement Obligations under the MSP Law*

67.     On June 18, 2017, E.H. was enrolled in a Medicare Advantage plan issued by ConnectiCare, Inc ("ConnectiCare").  ConnectiCare is an MAO.

68.     On June 18, 2017, E.H. was injured in an accident. As a direct and proximate result of the accident, E.H. sustained injuries that required medical items and services.

69.     At the time of the accident, E.H.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Hartford Casualty Insurance Company under policy number 02PH300897.  By virtue of its no-fault policy, Defendant Hartford Casualty Insurance Company was contractually obligated to pay and provide primary coverage for E.H.'s accident-related medical expenses.

70.     A list of E.H.'s diagnosis codes and injuries in connection with E.H.'s accident-related treatment is attached hereto as Exhibit B.

71.     The medical services were rendered on June 18, 2017 and June 19, 2017.  The medical providers subsequently issued to ConnectiCare bills for payment of E.H.'s accident-

related medical expenses.

72.    The medical provider billed and charged ConnectiCare $7,802.26 for E.H.'s accident-related medical expenses, of which ConnectiCare paid $1,702.86.

73.    By virtue of a no-fault policy which covered E.H. for the accident-related medical expenses detailed herein, Defendant Hartford Casualty Insurance Company is a primary payer responsible for payment and/or reimbursement of E.H.'s accident-related medical expenses.

74.    In fact, Defendant Hartford Casualty Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of E.H.'s accident-related medical expenses.

75.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse Connecticare. A true and correct copy of Defendant Hartford Casualty Insurance Company's report to CMS is attached hereto as Exhibit C. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for E.H.'s accident-related injuries in the first instance, Defendant Hartford Casualty Insurance Company failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

76.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Hartford Casualty Insurance Company for its failure to reimburse ConnectiCare's conditional payment for E.H.'s accident-related expenses.

### The J.O. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law

77.    On December 17, 2014, J.O. was enrolled in a Medicare Advantage plan issued by ConnectiCare.

78.    On December 17, 2014, J.O. was injured in an accident.  As a direct and proximate result of the accident, J.O. sustained injuries that required medical items and services.

79.    At the time of the accident, J.O.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 02RBA556180.  By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for J.O.'s accident-related medical expenses.

80.    A list of J.O.'s diagnosis codes and injuries in connection with J.O.'s accident-related treatment is attached hereto as Exhibit D.

81.    The medical services were rendered on December 17, 2014. The medical providers subsequently issued to ConnectiCare bills for payment of J.O.'s accident-related medical expenses.

82.    The medical provider billed and charged ConnectiCare $816.10 for J.O.'s accident-related medical expenses, of which ConnectiCare paid $183.42.

83.    By virtue of a no-fault policy which covered J.O. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of J.O.'s accident-related medical expenses.

84.    In fact, Defendant Sentinel Insurance Company, Ltd. reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of J.O.'s accident-related medical expenses.

85.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit E. Despite reporting that it was a

primary payer, and the corresponding admission that it should have paid for J.O.'s accident-related injuries in the first instance, Defendant Sentinel Insurance Company, Ltd. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

86.     Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse ConnectiCare's conditional payment for J.O.'s accident-related expenses.

> ### The T.C. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law

87.     On June 5, 2015, T.C. was enrolled in a Medicare Advantage plan issued by ConnectiCare.

88.     On June 5, 2015, T.C. was injured in an accident.  As a direct and proximate result of the accident, T.C. sustained injuries that required medical items and services.

89.     At the time of the accident, T.C.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 31SBAPK7558. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for T.C.'s accident-related medical expenses.

90.     A list of T.C.'s diagnosis codes and injuries in connection with T.C.'s accident-related treatment is attached hereto as Exhibit F.

91.     The medical services were rendered between June 9, 2015 and September 28, 2015. The medical providers subsequently issued to ConnectiCare bills for payment of T.C.'s accident-related medical expenses.

92.      The medical provider billed and charged $1,894.42 for T.C.'s accident-related

medical expenses, of which ConnectiCare paid $543.10.

93.    By virtue of a no-fault policy which covered T.C. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of T.C.'s accident-related medical expenses.

94.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of T.C.'s accident-related medical expenses.

95.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit G. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for T.C.'s accident-related injuries in the first instance, Defendant Sentinel Insurance Company, Ltd. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

96.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse ConnectiCare's conditional payment for T.C.'s accident-related expenses.

### The K.S. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law

97.    On July 18, 2014, K.S. was enrolled in a Medicare Advantage plan issued by ConnectiCare.

98.    On July 18, 2014, K.S. was injured in an accident. As a direct and proximate result of the accident, K.S. sustained injuries that required medical items and services.

99.    At the time of the accident, K.S.'s accident-related medical costs and expenses were

covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 31SBAPP3480. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for K.S.'s accident-related medical expenses.

100.    A list of K.S.'s diagnosis codes and injuries in connection with K.S.'s accident-related treatment is attached hereto as Exhibit H.

101.    The medical services were rendered between July 18, 2014 and July 22, 2014. The medical providers subsequently issued to ConnectiCare bills for payment of K.S's accident-related medical expenses.

102.    The medical provider billed and charged $2,590.00 for K.S.'s accident-related medical expenses, of which ConnectiCare paid $516.97.

103.    By virtue of a no-fault policy which covered K.S. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of K.S.'s accident-related medical expenses.

104.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of K.S.'s accident-related medical expenses.

105.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse Connecticare. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit I. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for K.S.'s accident-related injuries in the first instance, Defendant Sentinel Insurance Company, Ltd. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

106.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse ConnectiCare's conditional payment for K.S.'s accident-related expenses.

### *The D.R. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company's Failure to Meet its Reimbursement Obligations under the MSP Law*

107.    On December 26, 2014, D.R. was enrolled in a Medicare Advantage plan issued by ConnectiCare.

108.    On December 26, 2014, D.R. was injured in an accident. As a direct and proximate result of the accident, D.R. sustained injuries that required medical items and services.

109.    At the time of the accident, D.R.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 02PH286134. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for D.R.'s accident-related medical expenses.

110.    A list of D.R.'s diagnosis codes and injuries in connection with D.R.'s accident-related treatment is attached hereto as Exhibit J.

111.    The medical services were rendered on December 26, 2014. The medical providers subsequently issued bills to ConnectiCare for payment of D.R.'s accident-related medical expenses.

112.    The medical provider billed and charged $592.00 for D.R.'s accident-related medical expenses, of which ConnectiCare paid $190.53.

113.    By virtue of a no-fault policy which covered D.R. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer

responsible for payment and/or reimbursement of D.R.'s accident-related medical expenses.

114.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of D.R.'s accident-related medical expenses.

115.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse Connecticare. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit K. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for D.R.'s accident-related injuries, Defendant Sentinel Insurance Company, Ltd. failed to do so, giving rise to a claim under the MSP Law.

116.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse ConnectiCare's conditional payment for D.R.'s accident-related expenses.

### The M.B. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law

117.    On August 9, 2016, M.B. was enrolled in a Medicare Advantage plan issued by HIP.

118.    On August 9, 2016, M.B was injured in an accident. As a direct and proximate result of the accident, M.B. sustained injuries that required medical items and services.

119.    At the time of the accident, M.B.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 12SBAUL2227. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for M.B.'s accident-related

medical expenses.

120.    A list of M.B.'s diagnosis codes and injuries in connection with M.B.'s accident-related treatment is attached hereto as Exhibit L.

121.    The medical services were rendered between August 10, 2016 and October 25, 2016. The medical providers subsequently issued bills to HIP for payment of M.B.'s accident-related medical expenses.

122.    The medical provider billed and charged $8,382.00 for M.B.'s accident-related medical expenses, of which HIP paid $1,973.77.

123.    By virtue of a no-fault policy which covered M.B. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of J.B.'s accident-related medical expenses.

124.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of M.B.'s accident-related medical expenses.

125.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIP. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit M. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for M.B.'s accident-related injuries, Defendant Sentinel Insurance Company, Ltd. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

126.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse HIP's conditional payment for M.B.'s accident-related expenses.

*The M.Q. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law*

127.    On February 11, 2014, M.Q. was enrolled in a Medicare Advantage plan issued by HIP.

128.    On February 11, 2014, M.Q. was injured in an accident. As a direct and proximate result of the accident, M.Q. sustained injuries that required medical items and services.

129.    At the time of the accident, M.B.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 10RBB267435. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for M.Q.'s accident-related medical expenses.

130.    A list of M.Q.'s diagnosis codes and injuries in connection with M.Q.'s accident-related treatment is attached hereto as Exhibit N.

131.    The medical services were rendered between February 12, 2014 and February 25, 2015. The medical providers subsequently issued bills to HIP for payment of M.Q.'s accident-related medical expenses.

132.    The medical provider billed and charged HIP $3,836.00 for M.Q.'s accident-related medical expenses, of which HIP paid $2,169.00.

133.    By virtue of a no-fault policy which covered M.Q. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of M.Q.'s accident-related medical expenses.

134.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer

status related to payment and/or reimbursement of M.Q.'s accident-related medical expenses.

135.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIP. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit O. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for M.Q.'s accident-related injuries, Defendant Sentinel Insurance Company, Ltd. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

136.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse HIP's conditional payment for M.Q.'s accident-related expenses.

### The G.P. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law

137.    On January 9, 2014, G.P. was enrolled in a Medicare Advantage plan issued by HIP.

138.    On January 9, 2014, G.P. was injured in an accident. As a direct and proximate result of the accident, G.P. sustained injuries that required medical items and services.

139.    At the time of the accident, G.P.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 83SBAPU1288. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for G.P.'s accident-related medical expenses.

140.    A list of G.P.'s diagnosis codes and injuries in connection with G.P.'s accident-related treatment is attached hereto as Exhibit P.

141. The medical services were rendered between January 9, 2014 and July 2, 2014. The medical providers subsequently issued bills to HIP for payment of G.P.'s accident-related medical expenses.

142. The medical provider billed and charged HIP $8,553.00 for G.P.'s accident-related medical expenses, of which HIP paid $2,105.06.

143. By virtue of a no-fault policy which covered G.P. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of J.B.'s accident-related medical expenses.

144. In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of G.P.'s accident-related medical expenses.

145. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIP. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit Q. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for G.P.'s accident-related injuries, Defendant Sentinel Insurance Company, Ltd. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

146. Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse HIP's conditional payment for G.P.'s accident-related expenses.

### The B.B. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law

147. On May 5, 2015, B.B. was enrolled in a Medicare Advantage plan issued by HIP.

148.    On May 5, 2015, B.B. was injured in an accident. As a direct and proximate result of the accident, B.B. sustained injuries that required medical items and services.

149.    At the time of the accident, B.B.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number 12SBWRQ8944. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for B.B.'s accident-related medical expenses.

150.    A list of B.B.'s diagnosis codes and injuries in connection with B.B.'s accident-related treatment is attached hereto as Exhibit R.

151.    The medical services were rendered between May 5, 2015 and September 3, 2015. The medical providers subsequently issued bills to HIP for payment of B.B.'s accident-related medical expenses.

152.    The medical provider billed and charged HIP $6,885.00 for B.B.'s accident-related medical expenses, of which HIP paid $1,619.00.

153.    By virtue of a no-fault policy which covered B.B. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of J.B.'s accident-related medical expenses.

154.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of B.B.'s accident-related medical expenses.

155.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIP. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit S. Despite reporting that it was a

primary payer, and the corresponding admission that it should have paid for B.B.'s accident-related injuries, Defendant Sentinel Insurance Company, Ltd. failed to do so, giving rise to a claim under the MSP Law.

156.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse HIP's conditional payment for B.B.'s accident-related expenses.

### The J.T. Claim Demonstrates the Right to Recover for Defendant Trumbull Insurance Company's Failure to Meet its Reimbursement Obligations under the MSP Law

157.    On November 29, 2017, J.T. was enrolled in a Medicare Advantage plan issued by ConnectiCare.

158.    On November 29, 2017, J.T. was injured in an accident. As a direct and proximate result of the accident, J.T. sustained injuries that required medical items and services.

159.    At the time of the accident, J.T.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Trumbull Insurance Company, under policy number 55PHJ946006. By virtue of its no-fault policy, Defendant Trumbull Insurance Company was contractually obligated to pay and provide primary coverage for J.T.'s accident-related medical expenses.

160.    A list of J.T.'s diagnosis codes and injuries in connection with J.T.'s accident-related treatment is attached hereto as Exhibit T.

161.    The medical services were rendered between November 29, 2017 and December 28, 2017. The medical providers subsequently issued bills to ConnectiCare for payment of J.T.'s accident-related medical expenses.

162.    The medical provider billed and charged ConnectiCare $7,447.48 for J.T.'s

accident-related medical expenses, of which ConnectiCare paid $5,794.30.

163.    By virtue of a no-fault policy which covered J.T. for the accident-related medical expenses detailed herein, Defendant Trumbull Insurance Company is a primary payer responsible for payment and/or reimbursement of J.T.'s accident-related medical expenses.

164.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of J.B.'s accident-related medical expenses.

165.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of Defendant Trumbull Insurance Company's report to CMS is attached hereto as Exhibit U. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for J.T.'s accident-related injuries, Defendant Trumbull Insurance Company failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

166.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Trumbull Insurance Company for its failure to reimburse ConnectiCare's conditional payment for J.T.'s accident-related expenses.

> ### The C.A. Claim Demonstrates the Right to Recover for Defendant Hartford Casualty Insurance Company's Failure to Meet its Reimbursement Obligations under the MSP Law

167.    On May 17, 2015, C.A. was enrolled in a Medicare Advantage plan issued by HIP.

168.    On May 17, 2015, C.A. was injured in an accident. As a direct and proximate result of the accident, C.A. sustained injuries that required medical items and services.

169.    At the time of the accident, C.A.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Hartford Casualty Insurance Company under policy

number 10PH660417. By virtue of its no-fault policy, Defendant Hartford Casualty Insurance Company was contractually obligated to pay and provide primary coverage for C.A.'s accident-related medical expenses.

170.    A list of C.A.'s diagnosis codes and injuries in connection with C.A.'s accident-related treatment is attached hereto as Exhibit V.

171.    The medical services were rendered between May 5, 2015 and September 3, 2015. The medical providers subsequently issued to HIP bills for payment of C.A.'s accident-related medical expenses.

172.    The medical provider billed and charged HIP $17,468.00 for C.A.'s accident-related medical expenses, of which HIP paid $1,369.00.

173.    By virtue of a no-fault policy which covered C.A. for the accident-related medical expenses detailed herein, Defendant Hartford Casualty Insurance Company is a primary payer responsible for payment and/or reimbursement of C.A.'s accident-related medical expenses.

174.    In fact, Defendant Hartford Casualty Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of C.A.'s accident-related medical expenses.

175.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIP. A true and correct copy of Defendant Hartford Casualty Insurance Company's report to CMS is attached hereto as Exhibit W. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for C.A.'s accident-related injuries in the first instance, Defendant Hartford Casualty Insurance Company failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

176.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Hartford Casualty Insurance Company for its failure to reimburse HIP's conditional payment for C.A.'s accident-related expenses.

### The C.R. Claim Demonstrates the Right to Recover for Defendant Hartford Fire Insurance Company's Failure to Meet its Reimbursement Obligations under the MSP Law

177.    On July 13, 2014, C.R. was enrolled in a Medicare Advantage plan issued by SummaCare.

178.    On July 13, 2014, C.R. was injured in an accident. As a direct and proximate result of the accident, C.R. sustained injuries that required medical items and services.

179.    At the time of the accident, C.R.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Defendant Hartford Fire Insurance Company under policy number 55PHK648979. By virtue of its no-fault policy, Defendant Hartford Fire Insurance Company was contractually obligated to pay and provide primary coverage for C.R.'s accident-related medical expenses.

180.    A list of C.R.'s diagnosis codes and injuries in connection with C.R.'s accident-related treatment is attached hereto as Exhibit X.

181.    The medical services were rendered between July 13, 2014 and December 6, 2014. The medical providers subsequently issued bills to SummaCare for payment of C.R.'s accident-related medical expenses.

182.    The medical provider billed and charged SummaCare $6,934.00 for C.R.'s accident-related medical expenses, of which SummaCare paid $786.19.

183.    By virtue of a no-fault policy which covered C.R. for the accident-related medical expenses detailed herein, Defendant Hartford Fire Insurance Company is a primary payer

responsible for payment and/or reimbursement of C.R.'s accident-related medical expenses.

184.    In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of C.R.'s accident-related medical expenses.

185.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse SummaCare. A true and correct copy of Defendant Hartford Fire Insurance Company's report to CMS is attached hereto as Exhibit Y. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for C.R.'s accident-related injuries in the first instance, Defendant failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

186.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Hartford Fire Insurance Company for its failure to reimburse SummaCare's conditional payment for C.R.'s accident-related expenses.

### The D.S. Claim Demonstrates the Right to Recover for Defendant Sentinel Insurance Company, Ltd.'s Failure to Meet its Reimbursement Obligations under the MSP Law

187.    On April 15, 2011, D.S. was enrolled in a Medicare Advantage plan issued by HIP.

188.    On April 15, 2011, D.S. was injured in an accident. As a direct and proximate result of the accident, D.S. sustained injuries that required medical items and services.

189.    At the time of the accident, D.S.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Sentinel Insurance Company, Ltd. under policy number YZDAL88174. By virtue of its no-fault policy, Defendant Sentinel Insurance Company, Ltd. was contractually obligated to pay and provide primary coverage for D.S.'s accident-related medical expenses.

190.     A list of D.S.'s diagnosis codes and injuries in connection with D.S.'s accident-related treatment is attached hereto as Exhibit Z.

191.     The medical services were rendered between April 15, 2011 and October 3, 2012. The medical providers subsequently issued to HIP bills for payment of D.S.'s accident-related medical expenses.

192.     The medical provider billed and charged HIP $2,226.00 for D.S.'s accident-related medical expenses, of which HIP paid $502.00.

193.     By virtue of a no-fault policy which covered D.S. for the accident-related medical expenses detailed herein, Defendant Sentinel Insurance Company, Ltd. is a primary payer responsible for payment and/or reimbursement of D.S.'s accident-related medical expenses.

194.     In fact, Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of D.S.'s accident-related medical expenses.

195.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIP. A true and correct copy of Defendant Sentinel Insurance Company, Ltd.'s report to CMS is attached hereto as Exhibit AA. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for D.S.'s accident-related injuries in the first instance, Defendant Sentinel Insurance Company, Ltd. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

196.     Accordingly, Plaintiff is entitled to collect double damages against Defendant Sentinel Insurance Company, Ltd. for its failure to reimburse HIP's conditional payment for D.S.'s accident-related expenses.

**The Exemplar Settlement Claims**

***The G.C. Claim Demonstrates the Right to Recover for Defendant The Hartford Financial Services Group, Inc.'s Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries***

197.     On January 19, 2016, G.C. was enrolled in a Medicare Advantage plan issued and administered by HIP.

198.     On January 19, 2016, G.C. was injured in an accident. As a direct and proximate result of the accident, G.C. sustained injuries that required medical items and services.

199.     The tortfeasor responsible for the accident was insured by The Hartford Financial Services Group, Inc. under policy number Y75AL32005 and/or 55PHJ860876.

200.     A list of G.C.'s diagnosis codes and injuries in connection with G.C.'s accident-related treatment is attached hereto as Exhibit BB.

201.     The medical services were rendered on January 19, 2016.  The medical providers subsequently issued bills to HIP for payment of G.C.'s accident-related medical expenses.

202.     The medical provider billed and charged HIP $2,026.00 for G.C.'s accident-related medical expenses, of which HIP paid $374.00.

203.     Following G.C.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with G.C. By entering into that settlement and releasing all claims, including medical expenses, Defendant The Hartford Financial Services Group, Inc. is a primary payer responsible for payment and/or reimbursement of G.C.'s accident-related medical expenses.

204.     In fact, Defendant The Hartford Financial Services Group, Inc. reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of

G.C.'s accident-related medical expenses.

205.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIP. A true and correct copy of Defendant The Hartford Financial Services Group, Inc.'s report to CMS is attached hereto as Exhibit CC. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for G.C.'s accident-related injuries, Defendant The Hartford Financial Services Group, Inc. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

206.    Accordingly, Plaintiff is entitled to collect double damages against Defendant The Hartford Financial Services Group, Inc. for its failure to reimburse HIP's conditional payment for G.C.'s accident-related expenses.

### The B.G. Claim Demonstrates the Right to Recover for Defendant Hartford Insurance Company of the Midwest's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

207.    On April 12, 2014, B.G. was enrolled in a Medicare Advantage plan issued and administered by ConnectiCare.

208.    On April 12, 2014, B.G. was injured in an accident. As a direct and proximate result of the accident, B.G. sustained injuries that required medical items and services.

209.    The tortfeasor responsible for the accident was insured pursuant to a liability insurance policy issued by Hartford Insurance Company of the Midwest under policy number Y21AM12649.

210.    A list of B.G.'s diagnosis codes and injuries in connection with B.G.'s accident-related treatment is attached hereto as Exhibit DD.

211.    The medical services were rendered between April 12, 2014 and July 1, 2014. The medical providers subsequently issued to ConnectiCare a bill for payment of B.G.'s accident-

related medical expenses.

212.    The medical provider billed and charged ConnectiCare $355,481.09 for B.G.'s accident-related medical expenses, of which ConnectiCare paid $86,569.37.

213.    Following B.G.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with B.G.  By entering into that settlement and releasing all claims, including medical expenses, Defendant Hartford Insurance Company of the Midwest is a primary payer responsible for payment and/or reimbursement of B.G.'s accident-related medical expenses.

214.    In fact, Defendant Hartford Insurance Company of the Midwest reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of B.G.'s accident-related medical expenses.

215.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of Defendant Hartford Insurance Company of the Midwest's report to CMS is attached hereto as Exhibit EE. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for B.G.'s accident-related injuries, Defendant Hartford Insurance Company of the Midwest failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

216.    Accordingly, Plaintiff is entitled to collect double damages against Defendant Hartford Insurance Company of the Midwest for its failure to reimburse ConnectiCare's conditional payment for B.G.'s accident-related expenses.

***The F.M. Claim Demonstrates the Right to Recover for Defendant The Hartford Financial Services Group, Inc.'s Failure to Reimburse upon Entering into Settlements with Enrollees***

217.    On June 14, 2015, F.M. was enrolled in a Medicare Advantage plan issued and administered by ConnectiCare.

218.    On June 14, 2015, F.M. was injured in an accident. As a direct and proximate result of the accident, F.M. sustained injuries that required medical items and services.

219.    The tortfeasor responsible for the accident was insured pursuant to a liability insurance policy issued by The Hartford Financial Services Group, Inc. under policy number Y46AL76459.

220.    A list of F.M.'s diagnosis codes and injuries in connection with F.M.'s accident-related treatment is attached hereto as Exhibit FF.

221.    The medical services were rendered between June 14, 2015 and June 19, 2015.  The medical providers subsequently issued to ConnectiCare a bill for payment of F.M.'s accident-related medical expenses.

222.    The medical provider billed and charged ConnectiCare $4,876.47 for F.M.'s accident-related medical expenses, of which ConnectiCare paid $1,013.82.

223.    Following F.M.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with F.M. By entering into that settlement and releasing all claims, including medical expenses, Defendant The Hartford Financial Services Group, Inc. is a primary payer responsible for payment and/or reimbursement of F.M.'s accident-related medical expenses.

224.    In fact, Defendant The Hartford Financial Services Group, Inc. reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance

policy involved, and admitted its primary payer status related to payment and/or reimbursement of F.M.'s accident-related medical expenses.

225.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse Connecticare. A true and correct copy of Defendant The Hartford Financial Services Group, Inc.'s report to CMS is attached hereto as Exhibit GG. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for F.M.'s accident-related injuries, Defendant The Hartford Financial Services Group, Inc. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

226.    Accordingly, Plaintiff is entitled to collect double damages against Defendant The Hartford Financial Services Group, Inc. for its failure to reimburse ConnectiCare's conditional payment for F.M.'s accident-related expenses.

### *The T.B. Claim Demonstrates the Right to Recover for Defendant The Hartford Financial Services Group, Inc.'s Failure to Reimburse upon Entering into Settlements with Enrollees*

227.    On April 13, 2014, T.B. was enrolled in a Medicare Advantage plan issued and administered by ConnectiCare.

228.    On April 13, 2014, T.B. was injured in an accident. As a direct and proximate result of the accident, T.B. sustained injuries that required medical items and services.

229.    The tortfeasor responsible for the accident was insured pursuant to a liability insurance policy issued by The Hartford Financial Services Group, Inc. under policy number Y28AL16047.

230.    A list of T.B.'s diagnosis codes and injuries in connection with T.B.'s accident-related treatment is attached hereto as Exhibit HH.

231.    The medical services were rendered between April 13, 2014 and August 24, 2015.

The medical providers subsequently issued to ConnectiCare a bill for payment of T.B.'s accident-related medical expenses.

232.    The medical provider billed and charged ConnectiCare $15,517.40 for T.B.'s accident-related medical expenses, of which ConnectiCare paid $1,546.81.

233.    Following T.B.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with T.B. By entering into that settlement and releasing all claims, including medical expenses, Defendant The Hartford Financial Services Group, Inc. is a primary payer responsible for payment and/or reimbursement of T.B.'s accident-related medical expenses.

234.    In fact, Defendant The Hartford Financial Services Group, Inc. reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of T.B.'s accident-related medical expenses.

235.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. A true and correct copy of Defendant The Hartford Financial Services Group, Inc.'s report to CMS is attached hereto as Exhibit II. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for T.B.'s accident-related injuries, Defendant The Hartford Financial Services Group, Inc. failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

236.    Accordingly, Plaintiff is entitled to collect double damages against Defendant The Hartford Financial Services Group, Inc. for its failure to reimburse ConnectiCare's conditional payment for T.B.'s accident-related expenses.

## CLASS ALLEGATIONS

237.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-related medical expenses, when Defendants should have made those payments as primary payers in the first instance or reimbursed the Class Members.

238.     As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiff, as the rightful assignee of those organizations that assigned their recovery rights to Plaintiff, and to all Class Members. Class action law has long recognized that when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case is well suited for class-wide resolution.

239.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendants' failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

240.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

   a. **Numerosity**:  Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs and first tier entities (including their assignees)

throughout the United States who (1) were not reimbursed by Defendants under a policy which provided PIP or Med Pay coverage for medical expenses arising out of accidents or (2) were not reimbursed by Defendants after they entered into a settlement with a Medicare beneficiary enrolled in a MA Plan administered by an MAO. Thus, the numerosity element for class certification is met.

b. **Commonality**:  Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendants failed to reimburse conditional payments, report settlements and their Ongoing Responsibility for Medicals ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse MAOs pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce its own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Enrollees, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **Typicality**:  Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiff possesses the

same interests and suffered the same injury as the other Class Members, thereby demonstrating a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which they were obligated to do by their settlements or contractual obligations with Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, has a right to relief for Defendants' failure to make primary payments or reimburse Plaintiff and the Class Members for their conditional payments of Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendants' legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiff  will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members. In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, first tier entities, and downstream entities, and providing notice to such entities could be accomplished by direct communication.

241.    The Class is properly brought and should be maintained as a class action under Rule

23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class"). Defendants, whether deliberately or not, failed to make required payments under the MSP Law and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

242.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of class-wide impact using the MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

243.    Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to

all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

244.    Administering the proposed Damages Class will be relatively simple. Defendants provided no-fault and other liability policies to claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiff can determine which policyholders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff and the Class Members can identify unreimbursed payments made for accident-related medical expenses where Defendants were primary payers.

## CLASS DEFINITION

245.    The putative class (hereinafter referred to as "Class Members") is defined as:

### Contractual Obligations Class

All Medicare Advantage Organizations (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare Enrollee's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Enrollees; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Organizations (or their assignees) for the items and services that were provided related to the claims of the Medicare Enrollees;

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

### Settlement Class

All Medicare Advantage Organizations (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare Enrollee's medical expenses where Defendant:

(1) is the primary payer by virtue of having settled a claim with a Medicare Advantage

Plan Enrollee;

(2) settled a dispute to pay for medical expenses with a Medicare Advantage Plan Enrollee; and

(3) failed to reimburse Medicare Advantage Organizations (or their assignees) for their conditional payments upon settling with a Medicare Enrollee.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

246.    All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

## CAUSES OF ACTION

247.    Plaintiff's claims result from Defendants' failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendants issue liability insurance policies and are thus primary payers liable under the MSP Law.

## COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

248.    Plaintiff re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

249.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated parties.

250.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

251.    Defendants' no-fault and liability policies are primary plans, which rendered

Defendants primary payers for accident-related medical expenses.

252.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's assignors paid for items and services which were also covered by no-fault policies issued by Defendants.

253.    More specifically, Plaintiff's and the Class Members' Enrollees were also covered by no-fault, PIP, or medical payments policies issued by Defendants.

254.    In addition, Defendants entered into settlements with Enrollees of Plaintiff's assignors relating to accidents, but failed to reimburse Plaintiff's assignors and the putative Class Members for accident-related medical expenses paid by Plaintiff's assignors and the putative Class Members on behalf of Enrollees. Defendants are liable for reimbursement of these accident-related medical expenses even if they subsequently paid out the maximum benefits under the policies.

255.    Because Defendants are primary payers, the Medicare payments for which Plaintiff seeks reimbursement constitute conditional payments under the MSP Law.

256.    Defendants were required to timely reimburse Plaintiff's assignors and Class Members for their conditional payments of Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

257.    Plaintiff and the Class Members have suffered money damages as a direct result of Defendants' failure to reimburse the accident-related medical expenses.

258.    Defendants have derived substantial profits by placing the burden of financing medical treatments for their policyholders on the shoulders of Plaintiff's assignors and the Class Members.

259.    In this case, Defendants failed to administratively appeal Plaintiff's assignors'

rights to reimbursement within the administrative remedies period on a class-wide basis. Defendants, therefore, are time-barred from challenging the propriety of amounts paid.

260.    Plaintiff, for itself and on behalf of the Class Members, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failure to make appropriate and timely reimbursement of conditional payments for Enrollees' accident-related medical expenses.

**COUNT II**
**Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract**

261.    Plaintiff re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

262.    Pursuant to the MSP Law, Plaintiff's assignors are subrogated to the right to recover unreimbursed conditional payments from Defendants for Defendants' breach of contract with their insured. Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of an accident, and Defendants failed to meet that obligation. This obligation was, instead, fulfilled by Plaintiff's assignors and other Class Members. Under the MSP Law, Plaintiff, standing in its assignors' shoes, is permitted to subrogate the Enrollee's/insured's right of action against Defendants. *See* 42 C.F.R. § 411.26.

263.    Plaintiff complied with any conditions precedent to the filing of this action, to the extent applicable.

264.    Defendants failed and/or refused to make complete payments for Enrollees' accident-related expenses as required by its contractual obligations.

265.    Defendants failed to pay each Enrollee's covered losses, and Defendants have no reasonable proof to establish that they were not primary payers and, therefore, not responsible for the payment.

266.    Defendants' failure to pay the medical services and/or items damaged Plaintiff and the Class Members as set forth herein. Plaintiff and the Class Members processed and paid accident-related medical expenses and are entitled to recover up to the statutory policy limits for each Enrollees' medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

267.    Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members described herein, prays for the following relief:

a. find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b. designate Plaintiff as representative for the respective Class Members and Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

c. issue a judgment against Defendants that:

   i.    grants Plaintiff and the Class Members reimbursement of double damages for those monies to which the Class is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

   ii.   grants Plaintiff and the Class Members reimbursement of damages for those monies to which the Class is entitled pursuant to their direct right of recovery for breach of contract within Count II;

   iii.  grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

   iv.   grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: March 6, 2019       Respectfully Submitted:

***/s/ Christopher L. Coffin***

Christopher L. Coffin (CT Bar # 30759)
Tracy L. Turner (OH Bar # 0069927) (to be admitted *pro hac vice*)
Shannon A. Shelton (LA Bar # 34762) (to be admitted *pro hac vice*)
**PENDLEY, BAUDIN & COFFIN, LLP**
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70112
Telephone:    (504) 355-0086
Facsimile:     (504) 523-0699
ccoffin@pbclawfirm.com
tturner@pbclawfirm.com
sshelton@pbclawfirm.com

***Counsel for Plaintiff***

<u>**APPENDIX 1**</u>

**CMS' Standard for Storing Digital Health Insurance Claims Data**

1.      It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

    a.   The 837 standard is mandated by the Federal government and used by federal and state payors such as Medicare and Medicaid.

    b.   The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

    c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.      Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

    a.   <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

       i.   According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, DD representing two digits for the day of the month).

i

Sometimes this is alternately expressed as YYYYMMDD.[8]

    ii.   The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[9], 2011[10], 2012[11], 2013[12], 2014[13], and 2016.[14]

    iii.   CMS has also accepted the MM/DD/YYYY format for its local coverage determination data. *See* Local Coverage Determination ("LCD") Date of Service Criteria.[15]

---

[8] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[9] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[10] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R988OTN.pdf.

[11] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[12] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277 Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[13] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[14] Medicare Plan Payment Group Enterprise Systems Solutions Group Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Advance-Announcement-of-the-February-2017-Software-Release.pdf.

[15] CMS.gov. Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

    iv.   The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

    v.   In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

  b.  <u>Medical Diagnosis and Procedure Codes</u>:

    i.   Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[16][17]

---

[16] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[17] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of services is on or after October 1, 2015.

ii. International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10-CM (if the date of service is on or after October 1, 2015).

iii. Inpatient Medical Procedures ICD-9 Volume 2 and Volume 3 and ICD-10 PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv. Current Procedural Terminology ("CPT") – CPT[18] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.

v. Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[19]

---

[18] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[19] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

vi. Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[20]

vii. Medical Data Code Sets – The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

---

[20] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

## **APPENDIX 2**

### **Assignments**

**Health Insurance Plan of Greater New York**

1.      On March 20, 2018, Health Insurance Plan of Greater New York ("HIP") irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 16-08-483, a designated series of Plaintiff and to MSP Recovery, LLC, a Florida Limited Liability Company (the "HIP Assignment"). The HIP Assignment is attached hereto as Exhibit JJ, and expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or, subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising from or relating to the Assigned Medicare Recovery Claims, including claims under consumer protection statutes and laws, and all information relating thereto, as may be applicable…

> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

Exhibit JJ.

2.      The "Medicare Recovery Claims" assigned to Plaintiff include HIP's "legal and equitable rights to seek reimbursement and/or recover payments from primary payers . . . responsible to [HIP] directly or through rights conferred on [HIP] pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to [HIP's] Medicare (as defined above) enrollees arising under state and/or federal laws, including common law subrogation theories, that provide for the reimbursement of payments made by [HIP] . . . pursuant to a Medicare

Advantage Plan[.]" *Id.* at p. 1.

3.      The "Assigned Medicare Recovery Claims" included the above-referenced Medicare Recovery Claims, but excluded "Medicare Recovery Claims that [could] be asserted against Assignor's members, enrollees and/or contracted providers" and Medicare Recovery Claims that as of March 20, 2018 (the Effective Date of the agreement) had been assigned to and/or were being pursued "by other recovery vendors" for services rendered within a defined six-year time period. *Id*. These excluded claims are defined in the HIP Assignment as "Assignor Retained Claims." *Id*.

4.      The Assigned Medicare Recovery Claims include the right to pursue and recover payments made by HIP on behalf of the Enrollees attached hereto in Exhibit JJ.

5.      To confirm that Enrollees were not one of the Assignor Retained Claims, Plaintiff reviewed all carve-out lists provided by HIP with its claims data. The carve-out lists were provided by HIP to identify the Assignor Retained Claims (i.e., the specific claims of Enrollees excluded from being pursued by Plaintiff). Enrollees' claims are not included on HIP's carve-out lists. Further, in an abundance of caution, Plaintiff confirmed with HIP that the exemplar claims identified herein were not and/or are not being pursued by any subrogation vendors. Therefore, Enrollees' claims are not Assignor Retained Claims under the HIP Assignment.

6.      On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the HIP Assignment to Series 16-08-483, a designated series of Plaintiff ("Series Assignment 1"). The Series Assignment 1 from MSP Recovery, LLC to Series 16-08-483, which was ratified and approved by HIP, states:

> MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of … and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee, **Series 16-08-483, a designated series of MSP**

> **Recovery Claims, Series LLC,** a Delaware Series Limited Liability Company, and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", "Assigned Assets" "Assigned Medicare Recovery Claims" and "Assigned Documents" (and all proceeds and products thereof) as such terms may be defined in the March 20, 2018 Assignment Agreement[.]

Exhibit JJ.

## ConnectiCare, Inc.

7.      On March 20, 2018, ConnectiCare, Inc. irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC and to MSP Recovery, LLC, a Florida Limited Liability Company (the "ConnectiCare Assignment"). The ConnectiCare Assignment is attached hereto as Exhibit KK, and expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or, subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising from or relating to the Assigned Medicare Recovery Claims, including claims under consumer protection statutes and laws, and all information relating thereto, as may be applicable…

> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

Exhibit KK.

8.      On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the ConnectiCare Assignment to Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC  ("Series Assignment 2"). The Series Assignment 2 from MSP Recovery, LLC to Series 15-09-157, which was ratified and approved by ConnectiCare, Inc., states:

> MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of … and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to **Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC,** a Delaware series limited liability company ("Assignee"), and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all assigned Subject Medicare Recovery Claims, … as such terms may be defined in the March 20, 2018 Assignment Agreement[.]

Exhibit KK.

### **SummaCare, Inc.**

9.      By agreement dated May 12, 2017, SummaCare, Inc., an MAO, irrevocably assigned to MSP Recovery, LLC any and all of its rights to recover conditional payments made on behalf of its Enrollees ("SummaCare Assignment"). The SummaCare Assignment is attached hereto as Exhibit LL, and expressly provides, in pertinent part::

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and  all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims"… The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

Exhibit LL, § 4.1.

10.      On June 12, 2017, MSP Recovery, LLC assigned all rights acquired from the SummaCare Assignment to Series 16-11-509 ("Series Assignment 3"), a designated series of MSP Recovery Claims, Series LLC.

11.      Specifically, the assignment from MSP Recovery to Series 16-11-509 states:

> [E]ach undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and

products thereof) as such terms are defined in the **Recovery Agreement** dated **May 12, 2017**, by and among **SummaCare Inc.**, an Ohio corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company **(the "Agreement")**[.]

Exhibit LL.

12.    SummaCare, Inc. consented, approved, and ratified the Series Assignment 3 and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claims, Series LLC or any of its designated series, including but not limited to, Series 16-11-509.