### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MSP RECOVERY CLAIMS, | : | |
| SERIES LLC, | : | CIVIL CASE NO. |
|      Plaintiff, | : | 3:20-CV-00305 (JCH) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD FINANCIAL SERVICES | : | NOVEMBER 29, 2021 |
| GROUP, INC., et al., | : | |
|      Defendants. | : | |

### RULING ON DEFENDANTS' RULE 41(d) FEE APPLICATION (DOC. NO. 50)

## I.    INTRODUCTION

Pending before the court is an application for costs pursuant to Federal Rule of

Civil Procedure 41(d) ("Rule 41(d)") brought by three of the twenty defendants in this

case.  See Defs.' Mem. of Law in Supp. of Application for Attorney's Fees and Costs

("Defs.' Mem.") (Doc. No. 50).  In their Application, the three defendants – Hartford

Accident and Indemnity Company ("HAIC"), Hartford Insurance Company of the

Midwest ("HICM"), and Sentinel Insurance Company, Ltd. ("Sentinel") (collectively, the

"Florida defendants") – seek $401,523.58 in attorneys' fees related to four previous

actions filed by plaintiff against them that were litigated in the U.S. District Court for the

Southern District of Florida.  Id. at 2; see also Defs.' Reply Mem. of Law in Supp. of

Application for Attorney's Fees and Costs ("Defs.' Reply") (Doc. No. 56).  Plaintiff

substantially opposes the fee application, arguing that only $62,315.11 should be

recoverable pursuant to Rule 41(d).  See Pl.'s Mem. in Opp'n to Defs.' Application for

Attorney's Fees and Costs ("Pl.'s Mem.") (Doc. No. 55); Pl.'s Ex. A-2 (Doc. No. 55-3).

For the reasons stated below, the court orders plaintiff to pay $307,210.76

associated with the four previously filed actions.

1

## II.    BACKGROUND

Plaintiff MSP Recovery Claims, Series LLC ("MSP Recovery") brought this action against the three Florida defendants and seventeen other entities on March 6, 2020. See Compl. (Doc. No. 1).  In its Complaint, it alleged violations of the Medicare Secondary Payer Act ("MSPA") and breaches of contract via subrogation pursuant to section 411.24(e) of title 42 of the Code of Federal Regulations against all defendants.[1] See Compl. at ¶¶ 248-66.  This action followed four separate actions MSP Recovery had previously brought against the Florida defendants that were litigated extensively in the U.S. District Court for the Southern District of Florida.  After bringing all four of those actions and requiring the Florida defendants to brief eleven separate Motions to Dismiss, MSP Recovery voluntarily dismissed each case without prejudice pursuant to Rule 41(a)(1)(A)(i).[2]  The last of these four cases was dismissed on August 1, 2018. March Ruling at 15.

After MSP Recovery filed this fifth action more than a year and a half later, defendants filed four separate motions in response.  The first was the Rule 41(d) Motion for Costs and a Stay of Proceedings.  See Mot. for Rule 41(d) Costs and Stay of Proceedings and for Designation of Pl. as a Vexatious Litigant (the "Rule 41(d) Motion") (Doc. No. 15).  They also filed a Motion to Strike Class Allegations, see Doc. No. 18, and two separate Motions to Dismiss, which together sought the dismissal of all claims

---

[1] For the purposes of the present Ruling, a detailed recounting of MSP Recovery's claims in the current case is not necessary.  The court does, however, incorporate by reference its summary of those claims in its previous Ruling.  See Ruling on Defs.' Mot. for Costs, Fees, and Designation of Pl. as Vexatious Litigant at 2-9 ("March Ruling") (Doc. No. 47).

[2] In its March Ruling, the court comprehensively recounted each of the four prior Florida actions. See March Ruling at 9-16.  It incorporates by reference that discussion here.

against all defendants.  See No-Exemplar Defs.' Mot. to Dismiss (Doc. No. 16);

Exemplar Defs.' Mot. to Dismiss (Doc. No. 17). MSP Recovery opposed all four of these

Motions.  See Docs. Nos. 25-28).

On March 2, 2021, this court issued a Ruling granting in part and denying in part

the defendants' Rule 41(d) Motion.  March Ruling at 31.  It ordered "the plaintiff to pay

certain costs, including attorneys' fees, associated with the previously filed actions" and

"direct[ed] the parties to brief the appropriate amount of such costs."[3]  Id.  Pursuant to

Rule 41(d)(2), the court also stayed proceedings "pending payment of such costs by the

plaintiff."[4]  Id.  The parties timely filed their memoranda, with the Florida defendants

seeking to recover $401,523.58 out of a total of $437,750.08 in attorneys' fees from the

previous four actions, and plaintiff arguing that only $62,315.11 should be recoverable

pursuant to Rule 41(d).  Defs.' Mem. at 2, 7; Pl.'s Ex. A-2.

## III.   STANDARD OF REVIEW

Rule 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any

court files an action based on or including the same claim against the same defendant,

the court . . . may order the plaintiff to pay all or part of the costs of that previous action.

Fed. R. Civ. P. 41(d).  In its March Ruling, this court "ha[d] little difficulty concluding that

---

[3] The court also "direct[ed] counsel to confer within seven (7) days of [the March] Ruling" to attempt "to come to an agreement on [the fee] issue without further intervention by the court."  Id. at 27. Those efforts by the parties were not successful.  See, e.g., Joint Mot. to Extend Briefing Deadlines Relating to Rule 41(d) Fee Application at 2 (Doc. No. 48) (describing the parties' initial meet and confer and requesting more time to review the detailed billing data before making submissions to the court); Defs.' Mem. at 12 ("[a]lthough the parties met and conferred over the days and weeks following the Rule 41(d) Order, they were unable to come to an amicable agreement as to the amount of awardable attorneys' fees").

[4] The court also denied the defendants' request to designate the plaintiff as a vexatious litigant and administratively terminated the three other Motions – the two Motions to Dismiss and the Motion to Strike Class allegations – as moot, noting that defendants "may reclaim [those three motions] by filing a one-sentence motion after the stay in this case is lifted."  Id. at 31-32.

the current case is 'based on or includ[es] the same claim[s] against the same defendant[s]' as in the four Florida actions," and thus ordered the plaintiff to pay certain costs associated with those actions.  March Ruling at 20, 31.  The exact amount of those costs was left undecided, and is the subject of this Ruling.

The purpose of Rule 41(d) is well established: it is meant "'serve as a deterrent to forum shopping and vexatious litigation.'"  Horowitz v. 148 South Emerson Assocs. LLC, 888 F.3d 13, 23 (2d Cir. 2018) (quoting Andrews v. America's Living Ctrs., LLC, 827 F.3d 306, 309 (4th Cir. 2016)).  Given this purpose, it is also well established that, in the Second Circuit, "district courts may award attorneys' fees as part of costs under Rule 41(d)." [5] Id. at 24.  There are, however, limits to the costs, including attorneys' fees, that can be recovered pursuant to Rule 41(d).  First, "[o]nly reasonable costs are recoverable."  Loubier v. Modern Acoustics, Inc., 178 F.R.D. 17, 22 (D. Conn. 1998).  Second, Rule 41(d) "has been interpreted in this Circuit to include [only the] payment of attorney's fees . . . that cannot be used" in the existing action.  Pelczar v. Pelczar, No. 16-CV-55, 2017 WL 3105855, at *2 (E.D.N.Y. July 20, 2017).  Within these parameters,

---

[5] As the court noted in Horowitz, this has not been the approach of every Circuit.  "The Sixth Circuit has concluded in light of Rule 41(d)'s silence as to attorneys' fees that such fees are never available under the rule."  Id.  "The Fourth, Fifth, and Seventh Circuits have taken a hybrid approach and concluded that attorneys' fees may not generally be awarded as costs under the Rule, but with an exception for when the statute serving as the basis for the original suit itself allows for attorneys' fees (such as 42 U.S.C. § 1983)."  Id.

Although this court is of course bound by Horowitz, it notes that the case at hand is illustrative of why, in this court's view, the Second Circuit has clearly taken the correct approach in holding that attorneys' fees can be recovered pursuant to Rule 41(d).  The Florida defendants have represented to this court that the only costs they incurred in the four Florida actions were attorneys' fees.  See Defs.' Mem. at 14 n. 6 ("Florida [d]efendants did not incur or pay any costs in connection with the Florida Actions beyond attorneys' fees . . . [and] [a]ccordingly . . . seek attorneys' fees only").  As the Circuit noted in Horowitz, "the entire Rule 41(d) scheme would be substantially undermined were the awarding of attorneys' fees to be precluded."  Horowitz, 888 F.3d at 25.  Indeed, in this instance it would mean that this court's March Ruling would effectively be for naught; the Florida defendants would be stuck holding a $437,750.08 bill for defending against plaintiff's previous four actions; and MSP Recovery would be free to proceed with this case as if the previous four had never happened.

"District [C]ourts may use their discretion 'to award attorneys' fees as part of costs' under Rule 41(d)." Spinner Consulting LLC v. Stone Point Capital LLC, No. 3:19-CV-1341, 2020 WL 5810438, at *1 (D. Conn. Sept. 30, 2020) (quoting Horowitz, 888 F.3d at 25).

In determining whether a fee amount is "reasonable," courts in this Circuit begin with what "is generally referred to as the 'lodestar.'" Crown Awards, Inc. v. Discount Trophy & Co., Inc., 564 F. Supp. 2d 290, 297 (S.D.N.Y. 2008). The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Liberty Synergistics, Inc. v. Microflo, Ltd., No. 11-CV-0523, 2018 WL 5801280, at *5 (E.D.N.Y. Nov. 6, 2018) (internal quotations and citations omitted). It "should be based on prevailing market rates for comparable attorneys of comparable skill and standing in the pertinent legal community." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998) (internal quotations and citations omitted). "[B]oth [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a presumptively reasonable fee." Liberty Synergistics, Inc., 2018 WL 5801280, at *5 (internal quotations and citations omitted). It stands to reason that, in the Rule 41(d) context, the lodestar will be higher in circumstances where the prior case or cases were complex, further developed, and therefore required more work prior to dismissal.

Second, defendants are entitled to recover all "fees from the previous action except those fees that bear on the current matter." Lombardo v. R.L. Young, Inc., No. 18-CV-188, 2018 WL 6727356, at *3 (D. Conn. Dec. 21, 2018). In differentiating between work that is reusable and work that is not, courts in this Circuit have identified certain categories of attorneys' work that generally is recoverable. For instance, courts

have held that preparing removal papers, corporate disclosure statements, and motions for extensions of time for the prior cases usually constitutes work that cannot be reused in the refiled case. <u>Benitez v. Good2Go Ins., Inc.</u>, No. 3:20-CV-69, 2020 WL 4529879, at *2-4 (D. Conn. Aug. 6, 2020). The same can be true of transfer motions, settlement discussions, attendance at status conferences, and other work related to procedural matters in the prior cases. <u>See, e.g.</u>, <u>Cotiviti, Inc. v. Deagle</u>, 501 F. Supp. 3d 243, 265 (S.D.N.Y. 2020); <u>Jimenez v. GEICO Indemnity Co.</u>, No. 3:19-CV-00897, 2020 WL 3451821, at *3-4 (D. Conn. June 24, 2020). Still, these decisions are non-exhaustive and context-dependent: in determining if work from the previous actions is reusable in the instant one, "[i]t is well-settled" that courts, in exercising their discretion, should develop the factual record necessary to make such a determination and ensure that the "party seeking an award of fees . . . submit[s] evidence supporting the hours worked and rates claimed." <u>Iberia Foods Corp. v. Latinfood U.S. Corp.</u>, No. 20-CV-3009, 2021 WL 1616916, at *3 (E.D.N.Y. Aug. 26, 2021) (internal quotations and citations omitted); <u>see also</u> <u>Diplomatic Man, Inc. v. Nike, Inc.</u>, No. 08-CV-139, 2009 WL 935674, at *5 (S.D.N.Y. Apr. 7, 2009) ("[a]s required, [defendant] has submitted detailed time records from both [law firms] that specif[ies], for each attorney, the date, the hours expended, and the nature of the work done") (internal quotations and citations omitted).

## IV. DISCUSSION

In support of their request for attorneys' fees in the amount of $401,523.58, plaintiffs have submitted itemized billing receipts detailing every hour of attorneys' fees

that were paid by defendants in the previous cases.[6]  See Defs.' Ex. A (Doc. No. 50-2);

Defs.' Ex. B (Doc. No. 50-3).  To facilitate their analysis, they have also divided all of the

work from the prior four actions into ten distinct categories.  Those categories are as

follows, with both the total cost of that work and the amount requested here in

parentheses:

> (1) "Initial fact gathering, development, and investigation, and developing a general strategy and approach in defense of the Florida Actions" ($10,090.17 total costs/$9,081.15 requested costs);

> (2) "Removing the Florida Actions to federal court and opposing Plaintiff's motions to remand the HICM and Sentinel I Actions" ($49,498.76 total and requested costs);

> (3) "Preparing pro hac vice applications, corporate disclosures, Rule 26(f) reports; scheduling orders and reports, and initial disclosure, and attending court hearings and meet-and-confers with Plaintiff's counsel" ($16,854.70 total and requested costs);

> (4) "Work performed in connection with Florida Defendants' first round of motions to dismiss" ($122,873.14 total costs/$104,442.17 requested costs);

> (5) "Moving to transfer the HAIC and Sentinel I Actions to the U.S. District Court for the District of Connecticut" ($23,369.10 total and requested costs);

> (6) "Responding to and requesting discovery and litigating discovery disputes, including Florida Defendants' motion to stay discovery" ($28,935.98 total and requested costs)

> (7) "Work performed in connection with Florida Defendants' second round of motions to dismiss" ($50,244.94 total costs/$45,220.47 requested costs)

---

[6] In its Memorandum, plaintiff seeks an evidentiary hearing because, in its view, neither it nor the court can "fully understand or analyze" defendants' time entries.  Pl.'s Mem. at 16.  This is for two reasons.  First, the color-coding delineating the categories is confusing.  Id.  Second, defendants' attorneys have redacted portions of several entries on the invoice, making those entries difficult to decipher.  Id.  Defendants counter by pointing out that the redactions are quite limited, and include only information protected by attorney-client privilege.  Defs.' Reply at 9-10.  The court here agrees with defendants.  Not only is the color-coding scheme in defendants' exhibits comprehensible, the redactions do not impede a detailed review of the billing entries.  Because the court concludes that the record before it is sufficient and the fee award is "supported by evidence in the record," it denies plaintiff's request for a hearing.  Jimenez, 2020 WL 3451821, at *2.

(8) "Challenging Plaintiff's efforts to seal their first amended complaints" ($12,526.83 total and requested costs)

(9) "Work performed in connection with Florida Defendants' third round of motions to dismiss" ($117,620.40 total costs/$105,858.36 requested costs)

(10) "Preparing a Rule 11 Sanctions letter in the HAIC Action" ($5,736.06 total and requested costs)

Defs.' Mem. at 7-9, 24.[7]

Plaintiff challenges defendants' request on two grounds.  First, they maintain that the $401,523.58 amount is not appropriately limited to "work that cannot be used in the instant case."  Pl.'s Mem. at 1.  Second, they argue that "the amount of time that Defendants claim to have spent is unreasonable."[8]  Id.  They have also provided an annotated version of defendants' line sheet, responding to each entry in turn.  See Pl.'s Ex. A-1 (Doc. No. 55-2).  Below, the court moves through all ten categories of work, and addresses the arguments both parties make as to whether the hours in question are recoverable under Rule 41(d).

---

[7] While defendants maintain that "it would be appropriate to award them the entire amount of attorneys' fees incurred" in the prior four cases, they have deducted $36,226.50 from that total in making their request.  Id. at 22 (emphasis in original).  They did so by reducing the fees in categories 1, 4, 7, and 9 by 10%, 15%, 10%, and 10%, respectively, on the theory that these were "reasonable percentage[s]" given that "a sliver of the total work[ ] performed by Florida Defendants' Counsel theoretically bears relevance to this action."  Id. at 22, 24.

[8] Defendants have also provided extensive details regarding the billing rates and qualifications of each attorney who worked on the Florida matters.  See, e.g., Defs.' Mem. at 6-7; Defs.' Ex.C (Doc. No. 50-4); Defs.' Ex. F (Doc. No. 50-7).  Plaintiff does not challenge any of these rates, choosing instead to focus only on the total number of hours expended on various components of the Florida actions.  See Pl.'s Mem. at 11 ("[p]laintiff acknowledges that courts in this district have found billing rates comparable to Defendants['] reasonable . . . . However, the second step in the lodestar analysis requires the Court to determine the number of hours reasonably expended).  Because the court agrees with the parties that the Florida defendants' attorneys billed at a reasonable rate, it does not address that portion of the lodestar analysis further.

A.   <u>Reasonability of Hours Charged</u>

As an initial matter, the court addresses plaintiff's argument that the vast portion of the hours spent and billed by defendants' attorneys – and paid by defendants – were unreasonable.  Plaintiff seeks reductions in all ten categories based on this argument. The court disagrees and, because it finds the amount of time defendants' attorneys spent on the Florida matters to be reasonable, declines to reduce the number of recoverable hours based on this argument.

As defendants correctly point out, the scope and complexity of the Florida actions was notable.  These cases were not of the variety where the plaintiff filed a complaint and quickly withdrew it after minimal work by the defendant.  Rather, over the course of four separate actions, the parties litigated their positions extensively.  In total, defendants spent 1,615.70 hours briefing eleven Motions to Dismiss; three oppositions to leave to file amended complaints; four removal applications; four oppositions to remand; two Motions to Transfer Venue; four oppositions to Motions to Seal; four Motions for a Protective Order and to hold discovery in abeyance; and one Rule 11 sanctions letter – in addition to other procedural and administrative matters pertaining to the four cases.  Defs.' Reply at 4.  Based on the sheer breadth of defense counsels' work product, 1,615.70 hours is facially reasonable and not "disproportionate to the work performed."  <u>LCS Group LLC v. Shire LLC, et al.</u>, 383 F. Supp. 3d 274, 279 (S.D.N.Y. 2019).

Moreover, defendants paid their attorneys in full for all this work.  Defs.' Mem. at 7.  "The fact that [the Florida defendants], a[s] highly sophisticated business client[s], ha[ve] paid these bills, presumably after careful review by [their] general counsel or other senior business executives, is prima facie evidence of the reasonableness of the

9

amount as a whole (beyond just the reasonableness of the hourly rates charged), since [the Florida defendants] could not have assumed that [they] would be reimbursed in full, or even in part." Diplomatic Man, Inc., 2009 WL 935674, at *6.

Nor does a careful, line-by-line review of defendants' bills by this court "disclose[ ] [any] obvious problems of excess or waste." Id. Plaintiff rests its challenge to the reasonableness of the hours billed primarily on the argument that the hours spent on the Motions to Dismiss were exorbitant. See Pl.'s Mem. at 11-14. It notes that some of the memoranda in support of those Motions were virtually identical, see, e.g., Pl.'s Ex. A-3 (Doc. No. 55-4), or had substantial overlap. See, e.g., Pl.'s Ex. A-7 (Doc. No. 55-8). This is true. But the amount of work defense counsel was able to recycle throughout the Florida actions is already reflected by the fact that they billed an average of only 95.8 hours per motion. Pl.'s Mem. at 11. Where, as is the case here, defense counsel were faced with "a labor-intensive case . . . requiring knowledge of a specialized area of law", the "court should consider the complexity of the issues in the case" in determining the reasonableness of the hours spent litigating it. Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 303-04 (S.D.N.Y. 1999). And when that is the case, courts have held that upwards of 100 hours litigating a Motion to Dismiss can be reasonable. See, e.g., Berney v. Edison, No. 99-CV-823, 2010 WL 8497627, at *3-4 (E.D.N.Y. Jan. 29, 2010), report and recommendation adopted, 2012 WL 911821 (E.D.N.Y. Mar. 16, 2012) (holding that 141.31 hours spent on a motion to dismiss was reasonable after deducting 15% from the total time spent of 166.25 hours and noting that, "[a]lthough the total amount of time spent related to the motion is substantial, the time spent reflects the difficulties in the case cause by the conduct of plaintiff's

counsel"); <u>Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.</u>, 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (noting that, while 123.75 hours spent on a Motion to Dismiss may appear to be "excessive on its face," adequately accounting for the "complexity of the issues in the case" warranted only a 15% reduction of all hours, lowering the award amount related to the Motion to Dismiss to 105 hours); <u>Rudman v. CHC Group Ltd.</u>, No. 15-CV-3773, 2018 WL 3594828, at *5 (S.D.N.Y. July 24, 2018) (using 105 hours for the purposes of the lodestar figure for work related to "the motion to dismiss and case management").

Given the complexity of the Florida actions and MSP Recovery's ever-shifting exemplar claims, this court cannot conclude that the time defense counsel spent on the eleven Motions to Dismiss in the prior cases was unreasonable.  Accordingly, after a careful line-by-line review of the invoices submitted by defendants, the court declines to deduct hours based on plaintiff's argument to the contrary.

B.    <u>Categories Two, Three, Five, Eight, and Ten</u>

Defendants also argue that the time spent in the previous actions related to removal, remand, transfer, motions to seal, various procedural matters, initial disclosures, and a sanctions letter is all recoverable because the hours spent pursuing these efforts cannot be reused in the current litigation.  Plaintiff counters that, of the $107,985.45 defendants spent on these matters in the Florida litigation, only $29,802.86, or 27.5%, should be recoverable.  Pl.'s Ex. A-2.  On this issue, the court largely agrees with defendants, but reduces the $107,985.45 amount requested to $93,872.03 for the reasons set forth below.

Plaintiff makes three principal arguments across these five categories for a greater reduction.  The first involves a slight of hand.  In Category Three, defendants

11

lumped together their work in the previous actions "[p]reparing pro hace vice applications, corporate disclosures, Rule 26(f) reports; scheduling orders and reports, and initial disclosures, and attending court hearings and meet-and-confers with Plaintiff's counsel."  Defs.' Mem. at 7.  Taken together, the work in this category totaled 64.2 hours.  Id. at 8.  Yet in its response, plaintiff labels all this work as "initial discovery," and argues that no more than 10 hours should be awarded.  Pl.'s Mem. at 5-6.  In support, plaintiff cites Jimenez, 2020 WL 3451821, at *3, for the proposition that "costs associated with discovery" are not recoverable under Rule 41(d).

This argument misses the mark for two reasons.  First, while some of this work was related to initial disclosures, as defendants' catch-all labeling of the category indicates, it primarily deals with procedural or case management issues that are not reusable in the current action.  See, e.g. Defs.' Ex. A at 27 (billing, inter alia, for hours spend revising scheduling orders, preparing to attend a conference with plaintiff's counsel regarding case management report, editing pro hac vice applications, attending the Rule 26(f) teleconference, and reviewing the revised joint report).  Second, plaintiff's argument misunderstands the reasoning in Jimenez.  In that case, the costs associated with discovery in the previous case had "produced a tangible work product that [would] be useful in the present case."  Jimenez, 2020 WL 3451821, at *3.  Because that discovery "should have yielded information about the case that [would] help [the party] defend" itself in the current action, the work done to obtain that information was not determined to be recoverable, since the end product could be reused in the later suit.  Id.  Here, the parties do not dispute that little formal discovery was exchanged in the prior cases, and, even if it had been, Jimenez does not stand for the proposition that

case management tasks like the majority of the hours billed in Category Three would be unrecoverable.

Nevertheless, the court does agree that <u>Jimenez</u> supports the conclusion that work done in previous cases that "was a necessary part of the process of generating [ ] discovery" is not necessarily recoverable under Rule 41(d).  And other courts outside this Circuit that have considered the issue have determined that initial disclosures often produce information that can be reused in the later lawsuit, even if discovery does not progress much beyond that.  <u>See, e.g.</u>, <u>Citimortgage, Inc. v. Chicago Bancorp, Inc.</u>, 2015 WL 631365, at *7 (E.D. Mo. Feb. 12, 2015).  Accordingly, because approximately one-quarter of the total of $16,854.70 in costs incurred in Category Three were related to initial disclosures, the court reduces the award in Category Three by that amount to $12,641.03.

Second, plaintiff also argues that much of the work in Categories Five, Eight, and Ten related to transfer, motions to seal, and the sanctions letter is reusable in this case. The court does not agree.  Simply put, the case before this court does not involve transfer; there are no motions to seal; and sanctions are not being contemplated.  The work in these three categories is therefore precisely the sort of work that courts have consistently held "bear[s] no relation to and cannot be used in the instant case."  <u>Cotiviti</u>, 501 F. Supp. 3d at 265.  As such, "[d]efendants should be compensated for the work done" on these matters.  <u>Id.</u>  The fact that defense counsel spent 0.3 hours reviewing one of this court's Rulings regarding the MSPA change as part of their research into transfer does not change this conclusion.  Pl.'s Mem. at 9; Defs.' Ex. A at 48.  That work was done three and a half years ago, and it was part of a broader effort related to

transfer that is not at issue here.  Accordingly, the court awards the full amount of fees requested in Categories Five, Eight, and Ten, in the amount of $41,631.99.

As for Category Two, plaintiff argues that the costs related to removal should also be reduced because defendants' attorneys appear to have been researching removal in conjunction with other issues in the case during the early stages of the litigation.  There is some merit to this argument.  See, e.g. Defs.' Ex. A at 1 (billing for strategy meetings "regarding removal and other issues . . . research regarding removal and other arguments," and 8.5 hours for "researching and preparing email memos regarding removal and related issues").  That being said, the vast majority of the entries in this category appear to be strictly related to removal.  See, e.g., id. at 13.  And, as discussed below, see infra Section IV.D, simply because defense counsel was researching other issues does not necessarily mean that such work is reusable in the instant action.  Accordingly, "[b]ecause of these ambiguities," the court reduces the total amount of $49,498.76 requested in Category Two by 20% and awards defendants $39,599.01.  See Sea Spray Holdings, Ltd., 277 F. Supp. 2d at 325-26 (noting that when attorneys have engaged in "block billing" – i.e., time-keeping that notes time spent on the case but does not fully break down the time spent on each specific activity – it can be "difficult to determine whether . . . the work done" is reusable, and finding that "a fifteen percent 'flat' reduction" of fees is warranted in part to account for those "vague entries") (internal quotations and citations omitted).

Taken together, the court therefore awards Florida defendants $93,872.03 in costs related to attorneys' fees in Categories Two, Three, Five, Eight, and Ten.

C.    Categories One and Six

Categories One and Six include initial fact gathering, case and strategy development, and discovery work, primarily related to Florida defendants' Motions to Stay Discovery in the prior cases.  Total attorneys' fees in these two categories amounted to $39,026.15, though defendants only seek $38,017.13, having deducted 10% of the total costs off their request in Category One (but nothing off their request in Category Six) on the theory that "a sliver of the total work [in that category] . . . theoretically bears relevance to this action.  Defs.' Mem. at 8-9, 22, 24.  Plaintiff counters that much of the work in these two categories is reusable, and urges the court to award only $5,418.70.  Pl.'s Ex. A-2.

In support of their argument, plaintiff cites two cases where courts have declined to award attorneys' fees under Rule 41(d) for case strategy and discovery, on the grounds that both categories of work are reusable in the refiled case. Pl.'s Mem. at 3-4, 5-6.  First, in Shaker Village Condominium Ass'n, Inc. v. Certain Underwriters at Lloyd's, No. 08-CV-61935, 2009 WL 2835185, at *4 (S.D. Fla. Sept. 1, 2009), the court concluded that fees related to "general case strategy" in the prior case should not be awarded because that work "would most assuredly have been incurred in [the current] action as well" and could "presumably be recycled in [the current] case with little or no additions."  Second, in Jimenez, the court found that, because the "costs associated with discovery . . . ha[d] produced a tangible work product that [would] be useful in the present case," that work was not recoverable under Rule 41(d).  Jimenez, 2020 WL 3451821, at *3.

However, as defendants point out here, this case is not so clear-cut.  Most of the work billed on initial case strategy and development occurred in mid-2017, nearly three

15

years before the case before this court was filed. Defs.' Reply at 8. Given that

significant time gap, it is not unreasonable that defendants would have to revisit that

work and rethink their approach the instant case. Moreover, the fact that the exemplar

claims and representative assignments in the Florida actions were different than the

ones asserted in the current case, along with the inclusion of twenty different

defendants here, makes the case before the court different enough where the court

cannot "presume[e]" that the prior work can "be recycled . . . with little or no additions."

Shaker Village, 2009 WL 2835185, at *4; Defs.' Reply at 8. Finally, in contrast to

Jimenez where the discovery process led to tangible results that were transferrable to

the refiled case, defendants aver that "very little formal discovery was [actual] traded" in

the prior four cases, and that "the majority of the time was dedicated to . . . motions to

stay discovery." Defs.' Reply at 9. The billing invoices support these claims.

      Nevertheless, the court cannot agree with defendants that none or very little of

the work conducted in these two categories for the prior cases is reusable here. For

instance, entries related to "prepar[ation] for [a] data gathering call", review of related

dockets, and initial legal research into the core of plaintiff's claims surely still has some

relevance. Defs.' Ex. A-1 at 2-3. And even if the exemplar claims have shifted in the

current case, the time defendants spent familiarizing themselves with MSP Recovery

and the four Florida actions that were "based on or include[d] the same claim[s] against

the same defendant[s]" as the case at hand would presumably still have some utility as

well. March Ruling at 20 (quoting Fed. R. Civ. P. 41(d)). In addition, although the time

spent litigating discovery disputes led to little tangible results, as discussed supra in

Section IV.B, <u>Jimenez</u> cautions that such work can be considered a necessary part of the discovery process itself and therefore not recoverable under Rule 41(d).

Accordingly, after weighing these countervailing factors, the court in its discretion finds that a 50% flat reduction from the time <u>billed</u> in these categories is warranted. <u>See, e.g.</u>, <u>Kirsch</u>, 148 F.3d at 173 ("the court has discretion simply to deduct a reasonable percentage of hours claimed").  It therefore awards $19,513.08 to defendants for work performed in Categories One and Six.

> D.   <u>Categories Four, Seven, and Nine</u>

Categories Four, Seven, and Nine involve the hours defense counsel spent on three rounds of motions to dismiss in the four prior cases.  The fees related to all eleven motions to dismiss totaled $290,738.48.  Defs.' Mem. at 8-9.  After deducting a flat 15% from Category Four and 10% from Categories Seven and Nine, defendants request $255,521.00 of this amount.  <u>Id.</u> at 24.  Plaintiff counters with $27,093.52, making similar arguments to those it advanced in seeking to lower the fee award for other categories – namely that much of the work from these motions is recyclable in the present action.[9]

Defendants, however, make compelling arguments to the contrary.  They point out that the nature by which plaintiff presented its claims here meant that, in drafting the two Motions to Dismiss already filed in this case, they "in essence [had to] start[ ] from scratch."  Defs.' Reply at 7-8.  When that is the case, courts have reasoned that the defendants' "costs incurred in responding to Plaintiff['s] multiple complaints in the [prior

---

[9] Plaintiff also bases its reductions on the argument that much of the time defense counsel spent on the motions to dismiss was excessive and unnecessary.  The court has already rejected that argument, <u>see</u> <u>supra</u> at Section IV.A, and does not address it further here.

action] are largely wasted, as [defendants] must replicate those efforts in responding to Plaintiff['s] complaint in the present case.  <u>Jimenez</u>, 2020 WL 3451821, at *3.  Indeed, a comparison of the memoranda supporting the two motions to dismiss filed in this court reveals that defendants have advanced novel arguments here not presented in the prior cases.  <u>See, e.g.</u>, Defs.' Exs. 1-5 (Docs. No. 56-1-5).  These include standing arguments, group pleading arguments as they relate to the no-exemplar defendants, and a discussion of the new exemplar claims not addressed in the previous action.  <u>See generally</u> No-Exemplar Defs.' Mot. to Dismiss (Doc. No. 16); Exemplar Defs.' Mot. to Dismiss (Doc. No. 17).  Simply put, it is not the case that plaintiff has merely dismissed its prior Complaint and refiled the same document here.  Rather, MSP Recovery has kept the core of its allegations against the Florida defendants but presented its claims in a manner that makes it difficult for defense counsel to merely recycle memoranda from the previous actions.  For this reason, the court concludes that, unlike for Categories One and Six, a fifty percent reduction is not warranted.

Still, as noted <u>supra</u> at Section IV.C, the extensive hours defendants' attorneys spent litigating the prior cases are not completely unusable here.  In particular, counsel spent significant periods of time conducting research into claims that are fundamentally similar to the ones at hand here and familiarizing themselves with the context of the case.  To be sure, the passage of time and further development of new case law makes the repetition of much of that work necessary.  However, this court cannot conclude that only ten to fifteen percent of that work is recyclable.  Accordingly, the court deducts one-third of the <u>total</u> costs and awards Florida defendants $193,825.65 for the work done in Categories Four, Seven, and Nine.

## V.      CONCLUSION

For the above stated reasons, plaintiff is directed to pay Florida defendants costs in the amount of $307,210.76. This case remains stayed until plaintiff has done so. Defendants are ordered to file an acknowledgement of payment within 5 days of receipt of funds.


**SO ORDERED.**

Dated at New Haven, Connecticut this 29th day of November 2021.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge