**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC | : | 3:20-CV-305 (OAW) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| HARTFORD FINANCIAL | : | |
| SERVICES GROUP, INC., ET AL, | : | |
| *Defendants*. | : | AUGUST 22, 2022 |

**RULING ON EXEMPLAR DEFENDANTS' MOTION TO DISMISS**

### I.   INTRODUCTION

This case is one of hundreds of lawsuits initiated by Plaintiff in district courts throughout the country.  Plaintiff seeks to enforce the Medicare Secondary Payer Act ("MSP") to recover claims paid by three Medicare Advantage Organizations ("MAOs"): Health Insurance Plan of Greater New York ("HIP"); ConnectiCare, Inc. ("ConnectiCare"); and SummaCare, Inc. ("SummaCare").  Plaintiff alleges that Defendants have failed to reimburse the MAOs as required under the MSP.  Defendants have moved to dismiss the Complaint on the grounds that Plaintiff lacks standing to bring the claims on behalf of the MAOs.  Defendants also argue that even if Plaintiff had standing, the allegations of the Complaint fail to state a claim under the MSP.

For the reasons stated herein, the court finds that Plaintiff lacks standing to recover Medicare conditional payments made by HIP and ConnectiCare.  The remaining claim, brought on behalf of SummaCare, is time barred under the MSP's statute of limitations. The court hereby **GRANTS** the Exemplar Defendants' Motion to Dismiss (ECF No. 17). The court denies as moot the No-Exemplar Defendants' Motion to Dismiss (ECF No. 16)

1

and the pending Motion to Strike Class Allegations (ECF No. 18).  The Complaint hereby is **<u>DISMISSED,</u>** and the clerk is instructed to terminate the action.

## II.   BACKGROUND

### A.  The Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)

In 1980, Congress passed the Medicare Secondary Payer Act ("MSP") in an effort to reduce the rising costs of Medicare.  *See* 42 U.S.C. § 1395y(b) *et seq*; *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016).  The MSP amends the Social Security Act to make Medicare the "secondary" payer where a "primary plan" exists.  Thus, as a secondary payer, Medicare will not pay for medical services where "payment has been made, or can reasonably be expected to be made" by a "primary plan."  42 U.S.C. § 1395y(b)(2)(A)(i).  A "primary plan" includes a group health plan, a worker's compensation plan, automobile and liability insurance policies (including self-insured plans), or no-fault insurance policies.  42 U.S.C. § 1395y(b)(2)(a)(ii).

Under the MSP, Medicare may make conditional payments to a health care provider "if a primary plan . . . has not made or cannot reasonably be expected to make payment . . . promptly."  42 U.S.C. § 1395y(b)(2)(B)(i).  If a conditional payment is made, the primary plan must reimburse Medicare.  42 U.S.C. § 1395y(b)(2)(B)(ii).  Where the primary plan fails to reimburse Medicare, "the United States may . . . collect double damages against any such entity."  42 U.S.C. § 1395y(b)(2)(B)(iii).[1]  Further enforcement mechanisms under the MSP include a private cause of action which permits the recovery

---

[1]    The government's right of recovery is sometimes referred to as a "Medicare lien."

of double damages "in the case of a primary plan which fails to provide for primary payment."  42 U.S.C. § 1395y(b)(3)(A).

Plaintiff brings its claim under the MSP's private cause of action.  Count One, Compl., ECF No. 1 at 47.  Although the Second Circuit has yet to address the issue, a growing number of courts in other jurisdictions, including the Third and Eleventh Circuits, have recognized the right of an MAO to bring suit against a primary plan under the MSP's private cause of action.  *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012) (finding the private cause of action provision "broad and unambiguous," placing no limitations upon which private actors can bring suit for double damages where a primary plan fails to reimburse Medicare); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1236 (11th Cir. 2016) (rejecting argument that the private cause of action under the MSP is inapplicable to MAOs because MAOs derive secondary payer status from 42 U.S.C. § 1395w-22(a)(4) rather than the MSP); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F. Supp. 3d 1285, 1291 (S.D. Fla. 2015) (finding persuasive and adopting the reasoning of the Third Circuit's opinion in *Avandia*); *Humana Inc. v. Medtronic Sofamor Danek USA, Inc.*, 133 F. Supp. 3d 1068, 1078 (W.D. Tenn. 2015) (same); *Humana Ins. Co. v. Paris Blank LLP*, 187 F. Supp. 3d 676, 680 (E.D. Va. 2016) (same); *MSP Recovery Claims, Series LLC et al v. Plymouth Rock Assurance Corporation, Inc*, 404 F. Supp. 470, 481 (D. Mass. 2019) (same).  For purposes of this ruling, the court presumes that an MAO has standing under the MSP to bring an action against a primary payer for the recovery of conditional payments.

**B. The Complaint**

3

Plaintiff alleges that "Defendants have systematically and uniformly failed to honor their primary payer obligations" under the MSP by failing to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents.  Compl. at ¶ 1, ECF No. 1.  Plaintiff identifies Defendants as "auto or other liability insurers that provide either no-fault or med-pay insurance to its customers, including Medicare beneficiaries enrolled under Part C of the Medicare Act[.]" *Id*. at ¶ 2.  Through its proprietary software, Plaintiff has identified seventeen (17) claims for accident-related medical expenses which were paid by ConnectiCare, HIP, or SummaCare pursuant to a Medicare Advantage plan.  The Complaint refers to each of the claims by the Medicare Advantage enrollee's initials:  E.H.; J.O.; T.C.; K.S.; D.R.; M.B.; M.Q.; G.P.; B.B.; J.T.; C.A.; C.R.; D.S.; G.C.; B.G.; F.M.; T.B.  *Id*.  at ¶¶ 67, 77, 87, 97, 107,117,127, 137, 147, 157, 167, 177, 187, 197, 207, 217, 227.

Plaintiff alleges that the MAOs should have been reimbursed by Defendants because, for each of the claims, a defendant was a "primary payer."  For example, on thirteen (13) claims, Plaintiff alleges that each of the enrollees carried a no-fault insurance policy which provides coverage for accident-related medical expenses under its terms. *Id*. at ¶¶ 69, 79, 89, 99, 109,119,129, 139, 149, 159, 169, 179, 189.  Therefore, the defendant who issued the no-fault insurance policy is a "primary payer" who was obligated to reimburse the MAO for covering its Medicare Advantage enrollee's accident-related medical expenses.  *Id.*  Moreover, Plaintiff alleges that "Defendants have reported and admitted their primary payer status and responsibility for the accident-related medical expenses for medical items and/or services provided to Enrollees within ten (10) days of

the accident[.]"  *Id.* at ¶ 66.  These claims are identified in the Complaint as the "Exemplar No-Fault Claims."

For the remaining four (4) claims, Plaintiff alleges that the enrollee received a settlement from the tortfeasor's insurance carrier. *Id.* at ¶¶ 203, 213, 223, 233.  "By entering into that settlement and releasing all claims, including medical expenses," Plaintiff alleges that the respective insurance carrier is a "primary payer for payment and/or reimbursement" of the enrollee's accident-related medical expenses.  *Id.*  These claims are identified in the Complaint as the "Exemplar Settlement Claims."  For each of the Exemplar No-Fault Claims and Exemplar Settlement Claims (together, "Exemplar Claims"), Plaintiff alleges that the identified defendant has failed to reimburse ConnectiCare, HIP, or SummaCare for conditional payments made on behalf of their Medicare Advantage plan enrollees.

Although Plaintiff names twenty defendants in this action, only six defendants actually are identified in the Complaint as having issued a policy or settlement applicable to the claims alleged as unreimbursed: Hartford Casualty Insurance Company ("HCIC"); Sentinel Insurance Company ("Sentinel"); Trumbull Insurance Company ("Trumbull"); Hartford Fire Insurance Company ("HFIC"); Hartford Financial Services Group ("HFSG"); and Hartford Insurance Company of the Midwest ("HICM").  The parties refer to this group of Defendants, as well as three additional defendants (Hartford Insurance Company of Illinois ("HICI"), Twin City Fire Insurance Company ("Twin City"), and Property and

Casualty Insurance Company of Hartford ("PCICH")), as the "Exemplar Defendants."[2] The remaining eleven (11) defendants are referred to by the parties as the "No-Exemplar Defendants."

      i.   The Assignments

Plaintiff is not an MAO. Plaintiff is a Delaware series limited liability company. Plaintiff alleges that various MAOs, including ConnectiCare, HIP, and SummaCare, have assigned their recovery rights to Plaintiff so that it may bring suit under the MSP. Compl. at ¶ 59. Attached to Plaintiff's complaint is "Appendix 2" which contains a summary of the assignments relevant to this action, as well as the assignments themselves. Compl. at Appendix 2, Exhibit JJ (HIP Assignment), Exhibit KK (ConnectiCare assignment), Exhibit LL (SummaCare Assignment).

HIP & ConnectiCare Assignments. The HIP and ConnectiCare assignments are virtually identical. Under the HIP Assignment, HIP assigned its "Medicare Recovery Claims" to "Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC" and to "its affiliated entity MSP Recovery, LLC." Exhibit JJ, Compl, ECF No. 1-36 [hereinafter "HIP Assignment"]. Under the ConnectiCare Assignment, ConnectiCare assigned its "Medicare Recovery Claims" to "Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC" and "its affiliated entity MSP Recovery, LLC." Exhibit KK, Compl, ECF No. 1-37 [hereinafter "ConnectiCare Assignment"].

---

[2]     Defendants allege that the Complaint is facially inaccurate in that there are instances when Plaintiff alleges a certain defendant is associated with a reimbursable Medicare payment but, upon review, a different named defendant insured the enrollee in question. For example, Defendants have identified HICI, Twin City, and PCICH as the correct insurer with respect to enrollees G.C., C.R., and F.M. *See* Exhibit A, Exemplar Defs. Mot. to Dismiss, ECF No. 17-2. This accounts for the discrepancy between the six (6) defendants identified in the Complaint as a "primary payer" for an Exemplar Claim and the nine (9) Defendants who move to dismiss as the "Exemplar Defendants." *See* Exemplar Defs. Mot. to Dismiss, ECF No. 17-1 at n.8.

The term "Medicare Recovery Claims" is defined to include the "legal and equitable rights to seek reimbursement and/or recover payments from primary payers . . . pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to [HIP & ConnectiCare's] Medicare . . . enrollees[.]"  HIP Assignment, ECF No. 1-36 at 2; ConnectiCare Assignment, ECF No. 1-37 at 2.  Each assignment states that it is "effective, nunc pro tunc, on March 20, 2018," as the signatures are actually dated July 27, 2018 for the HIP assignment and July 30, 2018 for the ConnectiCare assignment. HIP Assignment, ECF No. 1-36 at 3; ConnectiCare Assignment, ECF No. 1-37 at 3. [hereinafter "Nunc Pro Tunc Assignments"]

The Nunc Pro Tunc Assignments carry two crucial limitations.  First, the "Assigned Medicare Recovery Claims" expressly exclude recovery claims that already have been assigned by HIP & ConnectiCare to other vendors.  *Id.*  Second, both assignments restrict the "Assigned Medicare Recovery Claims" to only those "Medicare Health Services that were rendered and paid for by [HIP or ConnectiCare] during the six (6) year period beginning September 29, 2011 and ending September 29, 2017."  *Id.*

In addition to the Nunc Pro Tunc Assignments, the Complaint also attaches two assignments made on April 4, 2018.  HIP April 4 Assignment, Exhibit JJ, ECF No. 1-36 at 4; ConnectiCare April 4 Assignment, Exhibit KK, ECF No. 1-36 at 4 (together, "April 4 Assignments").  In the April 4 Assignments, MSP Recovery LLC assigned its rights under the HIP and ConnectiCare March 20 assignments to Series 16-08-483 and Series 15-09-157, respectively.  *Id*.  Each series is a dedicated series of Plaintiff.

SummaCare Assignment.  On May 12, 2017, SummaCare assigned its Medicare recovery claims to "MSP Recovery, LLC." Exhibit LL, Compl, ECF No. 1-38 [hereinafter

"SummaCare Original Assignment"].    The assigned claims include the "legal rights to recover payments for the provision of healthcare services arising from . . . state and federal laws that provide for the reimbursement of conditional payments made by [SummaCare]."  *Id.* at 2.  Like the HIP and ConnectiCare assignments, the SummaCare assignment carries the same carve-out with respect to other vendors: the "'Assigned Claims', exclud[e] those claims previously identified by other vendors currently under contract with [SummaCare]."  *Id.* at 5.

The Complaint contains another SummaCare Assignment (the "May 12 Assignment"), which appears to be a separately drafted document from the SummaCare Original Assignment contained at ECF No. 1-38, pages 2–12.  This secondary May 12 Assignment, also between SummaCare and MSP Recovery LLC, limits the assigned claims to those with "dates of service from January 1, 2009 up to May 12, 2018."  *Id.* at 13.  Finally, the Complaint contains a third assignment of rights whereby MSP Recovery LLC transfers its rights assigned under the prior SummaCare assignments to Series 16-11-509.  *Id.* at 15 (the "June 12 Assignment"). The series is a dedicated series of Plaintiff.


III.    **DISCUSSION**

    A. **Standing**

Both the Exemplar and No-Exemplar Defendants have moved to dismiss the Complaint.  *See* Exemplar Defs. Mot. to Dismiss, ECF No. 17; No-Exemplar Defs. Mot. to Dismiss, ECF No. 16.  Both sets of Defendants argue that Plaintiff lacks standing to sue because it is not a party to the assignments, and the assignment chains are defective.

Defendants further argue that even if the assignments are valid, Plaintiff has not demonstrated that the claims in the Complaint are among the assigned claims.

     ii.  <u>Standard</u>

Under Article III of the Constitution, the jurisdiction of federal courts is limited to "cases" and "controversies."  U.S. Const. art. § 2.  "That restriction requires that the party invoking federal jurisdiction have *standing*—the personal interest that must exist at the commencement of the litigation."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (internal quotation marks omitted) (emphasis added).  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."  it. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (citing *Raines v. Byrd,* 521 U.S. 811, 818 (1997)).  "Article III standing consists of three 'irreducible' elements: (1) *injury-in-fact,* which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief."  *W.R. Huff Asset Mgmt. Co*, 549 F.3d at 106 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)) (emphasis in original).

A defendant may move to dismiss a claim where the court lacks subject matter jurisdiction due to a plaintiff's lack of constitutional standing.  Fed. R. Civ. P. 12(b)(1); *W.R. Huff Asset Mgmt. Co*, 549 F.3d at 104.  "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  "When the Rule 12(b)(1) motion is facial, *i.e.,* based solely

on the allegations of the complaint or the complaint and exhibits attached to it . . . the plaintiff has no evidentiary burden." *Id.* However, where the Rule 12(b)(1) motion is fact-based, "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* at 57 (citing *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir. 1976)).

### iii.   Plaintiff's Standing to Maintain Action on Behalf of its Series

Defendants argue that Plaintiff lacks standing to sue because (1) Plaintiff is not a party to the assignments; (2) the assignments are defective; and (3) the claims identified in the Complaint as unreimbursed are not within the scope of the assignments. Plaintiff does not claim to be a party to any of the assignments. Indeed, the assignments are between the MAOs (HIP, ConnectiCare, and SummaCare) and MSP Recovery LLC, and Series 16-08-483, Series 15-09-157, and Series 16-11-509. However, Plaintiff argues that as a Delaware series LLC, it has standing to bring suit on behalf of its subseries, including each of the series named in the assignments.

Under Delaware law, "[a] limited liability company agreement may establish or provide for the establishment of one or more designated series of members, managers, limited liability company interests or assets." Del. Code Ann. tit. 6, § 18-215(a). Each series may have its own "separate business purpose or investment objective" and have "separate rights, powers or duties" from the organizing ("parent") LLC. *Id.* The statute further specifies that "[u]nless otherwise provided in a limited liability company agreement," a series has "the power and capacity to . . . sue and be sued." Del. Code

10

Ann. tit. 6, § 18-215(b)(1).  The Eleventh Circuit has reasoned that because the language of the statute provides that each "series *may* have"—but are not required to have— "separate rights, powers or duties" from the organizing LLC, Plaintiff may have the same rights as its series LLCs.  *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1320 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2758, 210 L. Ed. 2d 906 (2021). Having the same rights as its series would allow Plaintiff to sue on behalf of its subseries regardless of whether the subseries each have their own standing to sue.  Delaware courts, however, have yet to address the issue.

In addition to Delaware's series statute, Plaintiff also points to its limited liability agreement ("Operating Agreement") as providing the authority to maintain actions on behalf of its series.  Compl. at ¶ 32–33.  The Operating Agreement specifies that "[f]or avoidance of doubt, the Company [i.e., Plaintiff] is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series.  *Id.* at ¶ 59.

At least two courts have rejected Plaintiff's attempts to sue on behalf of its series – describing it as an "abuse of corporate form" that is contrary to the well-established rule prohibiting parent corporations from suing on behalf of its subsidiaries.  *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 619CV00211MADTWD, 2019 WL 4222654, at *6 (N.D.N.Y. Sept. 5, 2019) (rejecting Plaintiff's attempt to sue on behalf of its series as "an abuse of corporate form"); *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, No. 18-21626-CIV, 2018 WL 5112998, at *12 (S.D. Fla. Oct. 19, 2018) (holding that Plaintiff lacks standing to sue on behalf of its series, and noting that "parent corporations lack standing to sue on behalf of their subsidiaries").

However, a growing number of courts have agreed with Plaintiff's position that both Delaware law and the Operating Agreement allow it to maintain an action on behalf of its series LLCs. *See ACE Am. Ins. Co.*, 974 F.3d at 1319–20 (recognizing that Delaware law permits Plaintiff "MSP Recovery Claims, Series LLC" to structure itself so that it has the same rights as its series LLCs); *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2018 WL 5086623, at *13 (C.D. Cal. Aug. 13, 2018) (finding operating agreement "sufficient" to demonstrate plaintiff's standing to assert claims on behalf of its series assignees); *MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Co.*, No. 1:19-CV-524-JLS-JJM, 2020 WL 8675835, at *8 (W.D.N.Y. Nov. 20, 2020) (finding that the operating agreement is "controlling", and that Plaintiff is a "proper plaintiff" with "standing to assert the rights, if any, assigned to Series 16-08-493"), *report and recommendation adopted sub nom. MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Corp.*, No. 19CV524JLSJJM, 2021 WL 784537 (W.D.N.Y. Mar. 1, 2021); *MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp., Inc.*, 404 F. Supp. 3d 470, 480 (D. Mass. 2019) (accepting as true Plaintiff's allegation that it has the right to pursue claims arising from the rights assigned to its series under its operating agreement); *MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 5:19CV00219, 2019 WL 6770729, at *9 (N.D. Ohio Dec. 12, 2019) (finding that Plaintiff's allegation that it maintains standing to sue on behalf of its series pursuant to a limited liability company agreement is "sufficient . . . to avoid the dismissal of Plaintiff for lack of standing"); *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, No. 20-20887-CIV, 2021 WL 720339, at *3 (S.D. Fla. Feb. 4, 2021) (same); *MSP Recovery Claims, Series LLC v.*

*United Servs. Auto. Ass'n*, No. 20-CV-21530, 2021 WL 861314, at *5 (S.D. Fla. Mar. 8, 2021) (same).

Given the "split of federal court authority over this thorny Delaware state law issue," the court declines to make any findings as to whether Plaintiff may bring suit on behalf of its series. *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, No. 20-CV-2102 (VEC), 2021 WL 1164091, at *11 (S.D.N.Y. Mar. 26, 2021) (declining to rule on whether "MSP Recovery Claims, Series LLC" may maintain an action on behalf of its subseries); *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, No. 20 CIV. 4776 (ER), 2022 WL 118387, at *9 (S.D.N.Y. Jan. 11, 2022) (same). For purposes of this motion only, the court will assume that Plaintiff has the right to sue on behalf of its designated series LLCs.

### iv.   Plaintiff's Standing Under HIP & ConnectiCare Assignments

Defendants argue that the HIP and ConnectiCare assignments are defective because the April 4 Assignments attempt to assign rights not yet in existence. The April 4 Assignments attached to the Complaint appear to convey rights contained in an agreement dated March 20, 2018. The Complaint's only reference to any March 20 agreements, however, are the Nunc Pro Tunc Assignments executed in July 2018.

Plaintiff explains that the Nunc Pro Tunc Assignments were "intended to be used in litigation" in place of the original assignments and "in the interest of protecting confidential and proprietary information contained therein." Pl.'s Opp. at 22, ECF No. 28. Plaintiff attaches to its opposition brief the original HIP and ConnectiCare assignments

executed on March 20, 2018.[3]  HIP Original Assignment, Exhibit B, ECF No. 29-1 at 14–21; ConnectiCare Original Assignment, Exhibit B, ECF No. 29-1 at 1–13 [hereinafter "Original Assignments"]. [4]

Under the Original Assignments, both HIP and ConnectiCare assigned its "Medicare Recovery Claims" to "MSP Recovery, LLC" and two of Plaintiff's series LLCs: Series 16-08-483 and Series 15-09-157, respectively.  ECF No. 29-1 at 1, 14; The term "Medicare Recovery Claims" is defined to include the "legal and equitable rights to seek reimbursement and/or recover payments from primary payers . . . pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to [HIP's & ConnectiCare's] Medicare . . . enrollees[.]"  *Id.*

Defendants contend that the Original Assignments undermine Plaintiff's standing. The court agrees.  Each agreement specifically states that the assignor/purchaser "shall pursue the recovery and reimbursement of the [Subject/Assigned] Medicare Recovery Claims *in its own name*."  ConnectiCare Original Assignment, § 3.2(4), ECF No 29-1 at 6; HIP Original Assignment § 6(d), ECF No. 29-1 at 18 (emphasis added).  Where the agreements subsequently are assigned by the assignor/purchaser to its affiliate, recovery must be pursued "*in the name of its affiliated entity*."  ConnectiCare Original Assignment,

---

[3]     The court notes that the original ConnectiCare assignment actually is a purchase agreement whereby ConnectiCare sold, rather than assigned, its recovery claims to the purchasers named in the agreement.  *See* ConnectiCare Original Assignment, Exhibit B, ECF No. 29-1.

[4]     Defendants contend that reviewing documents outside of the complaint is improper as they launch only a facial attack on Plaintiff's jurisdictional standing.  Def.'s Reply, ECF No. 41 at 6; *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts . . . from the complaint and from the exhibits attached thereto.").  However, by contesting the validity of the April 4 Assignments, Defendants have placed in dispute the jurisdictional fact of whether any assignments were in existence on March 20, 2018.  Therefore, the court may consider the Original Agreements to resolve the factual dispute as to standing.  *See id.* ("To the extent that [Defendants'] Rule 12(b)(1) motion placed jurisdictional facts in dispute . . . the district court properly considered evidence outside the pleadings.").

14

§ 3.2(5), ECF No 29-1 at 6; HIP Original Assignment § 6(d), ECF No. 29-1 at 18 (emphasis added).

Despite the provisions of the Original Assignments, this action is not brought "in the name of" MSP Recovery LLC, Series 15-09-157, Series 16-08-483, or any of their affiliates by way of a subsequent assignment.  Instead, the action is brought in the name of "MSP Recovery Series, LLC."  Plaintiff has not provided any evidence that it has been assigned the rights contained in the Original Assignments as an affiliate of MSP Recovery, LLC or the two series LLCs.  Instead, Plaintiff's only source of authority to bring this action is by way of its Operating Agreement.  Even if the court accepts that the Operating Agreement is valid, allowing Plaintiff to maintain this action would render meaningless the provisions of the Original Agreements that require actions to be brought only in the names of MSP Recovery LLC, Series 15-09-157, Series 16-08-483, or any of their affiliates.  *See Danouvong ex rel. Estate of Danouvong v. Life Ins. Co. of N. Am.*, 659 F. Supp. 2d 318, 324 (D. Conn. 2009) (noting that under Connecticut state law, "[t]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous[.]").  Moreover, the court refuses to nullify terms that HIP and ConnectiCare had agreed upon in the Original Assignments by referencing a document in which they had no say: Plaintiff's Operating Agreement.  The court finds that because this action is not brought by an assignee in its "own name" under the Original Assignments executed by HIP and ConnectiCare, Plaintiff may not maintain an action to recover claims on their behalf.

Accordingly, the court hereby **GRANTS** the Exemplar Defendants' motion to dismiss the sixteen (16) of the seventeen (17) claims in the Complaint brought pursuant

to the HIP and ConnectiCare Assignments: E.H.; J.O.; T.C.; K.S.; D.R.; M.B.; M.Q.; G.P.; B.B.; J.T.; C.A.; D.S.; G.C.; B.G.; F.M.; T.B.

     v.    <u>Plaintiff's Standing Under SummaCare Assignments</u>

The SummaCare Original Assignment was executed on May 12, 2017 between SummaCare and MSP Recovery, LLC.  SummaCare Assignment, ECF No. 1-38.  On June 12, 2017, MSP Recovery, LLC assigned its rights under the SummaCare Assignment to Series 16-11-509, a series of Plaintiff.  June 12 Assignment, ECF No. 1-38 at 15.

Unlike the HIP and ConnectiCare Assignments, the SummaCare assignments do not contain any provision requiring the direct assignee to bring a suit "in its own name." However, Defendants argue that the June 12 Assignment is void because SummaCare did not approve of the assignment from MSP Recovery, LLC to the series entity.  Indeed, the SummaCare Original Assignment requires that the assignor give written approval prior to any subsequent assignment.  *Id.* at § 7.10 ("This Agreement may not be assigned without the prior written consent of the other part[.]").  However, Plaintiff has provided the court with a letter from SummaCare stating that it has "consented to, approved and ratified" the June 12 Assignment.  ECF No. 46-1.  This letter is signed after the fact, on September 7, 2018 – more than a year after the June 12, 2017 assignment.  *Id.*  Although the letter is not evidence of the "prior written consent" required under the SummaCare Assignment, the court will not void the June 12 Assignment.  Both SummaCare and MSP Recovery, LLC have demonstrated their intent to assign the agreement to Series 16-11-509, and Connecticut law favors the "free assignability of contracts."  *See Rumbin v. Utica Mutual Ins. Co.*, 254 Conn. 259, 267–68 (2000) (noting that with respect to assignment

of contract claims, the modern approach favors "free assignability of contracts" over strict antiassignment provisions).

Because the June 12 Assignment gave Plaintiff's series the right to recover SummaCare's Medicare conditional payments, the court finds that Plaintiff has jurisdictional standing to bring the one (1) recovery claim alleged in the Complaint as arising pursuant to the SummaCare assignments (the "C.R. claim"). However, for the reasons noted below, Plaintiff has failed to state a claim with respect to the C.R. claim.

### B. Failure to State A Claim

#### i. Standard

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court shall accept as true all factual allegations in the complaint and draw all reasonable inferences in a plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (concluding that *Twombly* pleading standard applies in "all civil actions").

#### ii. The C.R. Claim

Plaintiff asserts one unreimbursed claim under the SummaCare assignments: the C.R. claim. Compl. at ¶ 177. Defendants move to dismiss the claim under Rule 12(b)(6).

Defendants argue that the claim is time-barred under the MSP's three-year statute of limitations, as C.R. last received related medical services on July 13, 2014.[5]  *See* Exemplar Defs. Mot. to Dismiss at 26, ECF No. 17-1.

Under the MSP, "[a]n action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made[.]"  28 U.S.C. § 1395y(b)(2)(B)(iii).  Plaintiff agrees with Defendants that the three-year statute of limitations is applicable and that it "begins to accrue upon 'notice' of a cause of action."  Pl.'s Opp. at 40, ECF No. 28; *see also MSPA Claims 1, LLC v. Bayfront HMA Medical Center, LLC*, No. 17-cv-21733, 2018 WL 1400465, at *6 (S.D. Fla. Mar. 20, 2018) (concluding that § 1395y(b)(2)(B)(iii) contains the statute of limitations applicable to actions brought to recover a conditional payment made by an MAO).  The court finds persuasive the reasoning of courts in other jurisdictions which have concluded that "[t]he statute of limitations begins to run when [the Centers for Medicare and Medicaid Services ("CMS")], not an MAO, is provided with notice."  *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2019 WL 3500285, at *2 (C.D. Cal. Aug. 1, 2019); *MSP Recovery Claims, Series LLC v. Am. Nat'l Prop. & Cas. Co.*, 550 F. Supp. 3d 1311, 1318 (S.D. Fla. 2021) (recognizing that MAOs have the ability to look up information about settlements reported to CMS).

---

[5]     Although Defendants contend that C.R. last received medical services on July 13, 2014, the Complaint alleges that "medical services were rendered [for C.R.] between July 13, 2014 and December 6, 2014.  Compl. at ¶ 181.  Indeed, July 13, 2014 is the date of C.R.'s accident.  *Id.* at ¶ 178.  Plaintiff attaches to the Complaint "[a] list of C.R.'s diagnosis codes and injuries" which indicates that the latest date of service ("DOS") is October 28, 2014, and the latest pharmacy service is December 6, 2014.  *See* Ex. X, Compl., ECF No. 1-24 at 4–5.  As explained herein, none of these dates is relevant to the running of the statute of limitations.

In the present case, the court finds that the C.R. claim is time barred under the three-year statute of limitations.

In the Complaint, Plaintiff alleges that "Defendants have reported and admitted their primary payer status and responsibility for the accident-related medical expenses for medical items and/or services provided to Enrollees within ten (10) days of the accident and for which Plaintiff's assignors made conditional payments." *Id.* at ¶ 66. Thus, according to the Complaint, HFIC,[6] at some point, reported and admitted to CMS HFIC's primary payer status and responsibility to pay for the medical items and services that were provided to C.R. within the ten (10) days following C.R.'s accident. Plaintiff contends that C.R.'s claim could not be time barred under the three-year statute of limitations, which runs from the date on which CMS is notified, because "nowhere in the Complaint does Plaintiff allege any information related to the date on which Defendants reported their primary payer status related to those medical expenses/conditional payments." Pl.'s Opp. at 41, ECF No. 28. The court disagrees. The Complaint alleges that "[a] true and correct copy of Defendant [HFIC's] report to CMS is attached hereto as Exhibit Y." Compl. at ¶ 184. Exhibit Y, in turn, reports on a "CMS Database Update" that it dates "January, 2017". Exhibit Y, Compl., ECF No. 1-25. Thus, under the allegations of the Complaint, and presuming that CMS updates its database sometime after receiving a report of primary payer responsibility, the latest possible date on which HFIC could have reported its primary payer status relative to C.R. was January 31, 2017. It follows that,

---

[6]    Defendants allege that Twin City, rather than HFIC, is the proper insurance company with respect to C.R.'s no-fault insurance policy. *See* Exhibit A, Exemplar Defs. Mot. to Dismiss, ECF No. 17-2 at 4. In support, Defendants provide what appears to be an attorney-prepared chart of each claim and the corresponding insurance provider. *Id.* Absent further proof, and because (in considering Defendants' Motion to Dismiss) the court is required to accept as true the allegations in Plaintiff's Complaint, the court presumes for purposes of this ruling that HFIC is the issuer on C.R.'s no fault insurance policy.

19

because "[t]he statute of limitations begins to run when [CMS] . . . is provided with notice," *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2019 WL 3500285, at *2 (C.D. Cal. Aug. 1, 2019), Plaintiff would have had until January 31, 2020, to bring a claim to recover conditional payments paid by SummaCare for C.R.'s accident-related medical services.  Plaintiff, however, did not file the instant action until March 6, 2020.  Accordingly, the court finds that the C.R. claim is time-barred under the MSP's three-year statute of limitations.  The Exemplar Defendants' motion to dismiss the C.R. claim hereby is **GRANTED.**

Plaintiff requests leave to amend the Complaint in the event that the Exemplar Defendants' motion to dismiss is granted.  The court denies leave to amend as the proposed amendments would be futile – Plaintiff does not have jurisdictional standing to bring the HIP & ConnectiCare claims, and the SummaCare claim fails to state a claim under Rule 12(b)(6).  *See Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 252 (2d Cir. 2017) ("Proposed amendments are futile, and thus must be denied, if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.") (internal quotation marks and citation omitted).

## IV.    CONCLUSION

Plaintiff seeks recovery of seventeen (17) Medicare conditional payments paid by three MAOs: HIP; ConnectiCare; and SummaCare.  However, Plaintiff lacks standing to assert sixteen (16) of the claims, which are brought under the HIP and ConnectiCare Assignments.  The remaining claim, brought under the SummaCare Assignments, is time-

barred under the statute of limitations.  Accordingly, the Exemplar Defendants' Motion to Dismiss (ECF No. 17) hereby is **<u>GRANTED</u>**.  The court hereby **<u>DENIES</u>** as moot the No-Exemplar Defendants' Motion to Dismiss (ECF No. 16) and the pending Motion to Strike Class Allegations (ECF No. 18).  The Complaint is **<u>DISMISSED</u>**, and the clerk hereby is directed to terminate this action.

**IT IS SO ORDERED.** Signed this 22nd day of August, 2022, at Hartford, Connecticut.

*/s/ Omar A. Williams*
Omar A. Williams
United States District Judge